UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

NATIONAL ABILITY S.A.,

                         Plaintiff,

     - against -

TINNA OILS & CHEMICALS LTD., TINNA FINEX
LTD., TINNA GROUP, TINNA AGRO INDUSTRIES
LTD., ADM INTEROCEANIC LIMITED, ADM COCOA
PTE. LTD., and ARCHER DANIELS MIDLAND
SINGAPORE PTE LTD.,

                        Defendants.

---------------------------------------------------------------X

07 Civ. 09913 (AKH)



ECF CASE

## SECOND AMENDED VERIFIED COMPLAINT

Plaintiff, NATIONAL ABILITY S.A. (hereinafter "Plaintiff"), by and through its

attorneys, Lennon, Murphy & Lennon, LLC, as and for its Second Amended Verified Complaint

against the Defendants, TINNA OILS & CHEMICALS LTD. ("Tinna"), TINNA FINEX LTD.

("Tinna Finnex"), TINNA GROUP ("Tinna Group"), TINNA AGRO INDUSTRIES LTD.

("Tinna Agro"), ADM INTEROCEANIC LIMITED ("ADM Interoceanic"), ADM COCOA

PTE. LTD. ("ADM Cocoa"), and ARCHER DANIELS MIDLAND SINGAPORE PTE LTD.

("ADM Singapore") (collectively referred to as "Defendants"), alleges, upon information and

belief, as follows:

    1.     This is an admiralty and maritime claim within the meaning of Rule 9(h) of the

Federal Rules of Civil Procedure and 28 United States Code § 1333. Jurisdiction over this

matter is also present pursuant to the Federal Arbitration Act, 9 United States Code § 1 *et seq.*,

and this Court's federal question jurisdiction, 28 United States Code § 1331.

    2.     At all times material to this action, Plaintiff was, and still is, a foreign corporation,

or other business entity organized and existing under the laws of Panama.

3.    Upon information and belief, Defendant Tinna was, and still is, a foreign corporation, or other business entity organized and existing under the laws of India.

4.    Upon information and belief, Defendant Tinna Finex was, and still is, a foreign corporation, or other business entity organized and existing under the laws of India.

5.    Upon information and belief, Defendant Tinna Group was, and still is, a foreign corporation, business entity and/or collection/group of companies organized and existing under the laws of India.

6.    Upon information and belief, Defendants Tinna Agro, ADM Interoceanic, ADM Cocoa and ADM Singapore were, and still are, foreign corporations, or other business entities organized and existing under foreign law.

7.    At all material times, Plaintiff was the Owner of the motor vessel "AMAZON REEFER" (hereinafter the "Vessel").

8.    By a charter party dated April 29, 1995, Plaintiff chartered the Vessel to Defendant Tinna for a voyage from Kandala to Novorossiysk.

9.    During the course of the charter, disputes arose between the parties regarding Defendant Tinna's failure to discharge the cargo as required under the charter party contract which caused Plaintiff to incur damages.

10.    Pursuant to the charter party, all disputes arising thereunder were to be submitted to arbitration in London with English Law to apply.

11.    Despite due demand, Defendant Tinna failed and/or refused to pay the sums due and owing to Plaintiff.

12.    Thus, Plaintiff commenced arbitration proceedings against Defendant Tinna on its claims.

13.     On November 19, 1998, an Award was issued in Plaintiff's favor and against the Defendant Tinna. *See Arbitration Award annexed hereto as Exhibit "1."*

14.     The Award found that Plaintiff succeeded on its claim, and directed Defendant Tinna to pay Plaintiff the principal sum of $819,983.16, together with interest thereon, at the rate of 7% per annum from October 1, 1995 until the date of the award, November 19, 1998.

15.     The Award further directed that Defendant Tinna was to pay Plaintiff's costs, which if not agreed upon, were to be assessed by the panel.

16.     Finally, the Award directed Defendant Tinna to pay Plaintiff the cost of the Award.

17.     Plaintiff has moved to enforce the Arbitration Award in India and expects a decision soon. *See Summary of Submission annexed hereto as Exhibit "2."*

18.     Tinna has submitted a defense in the Indian action that Plaintiff is barred from enforcing the Award against it as a "Scheme of Arrangement" or "Order" was issued by the Indian court in 1998 providing that Defendant Tinna's debts and liabilities at that time were to be transferred to a spin-off company, Defendant "Tinna Finex Ltd."

19.     Plaintiff submits that this defense is completely without merit and Plaintiff is permitted to enforce its arbitration award against Tinna and its alter-egos.

20.     In addition, upon information and belief, Defendant Tinna's attempt to transfer all of its assets and liabilities to another company, without consideration therefore, was/is merely an attempt to defraud its creditors such as Plaintiff.

21.     Defendant Tinna transferred all of its liabilities to what was/is in essence an assetless company (Defendant Tinna Finex Ltd.) and Plaintiff did not have a proper opportunity to contest this action as it was never properly notified.

5

22.     On October 12, 1999, a Final Award of Costs was issued directing Defendant Tinna to pay to Plaintiff the sum of £202,260.31, plus interest thereon at the rate of 7% from November 19, 1998 until payment is made.

23.     On June 26, 2008, Plaintiff filed a request that a judgment be entered on the Arbitration Award and Final Award of Costs in the High Court of Justice, Queen's Bench Division Commercial Court in London ("English Claim for Judgment"). *A copy of the English Claim for Judgment is annexed hereto as Exhibit "3".*

24.     Plaintiff requests security herein for the English Claim for Judgment which includes the Arbitration Award and the Final Award of Costs and/or the ultimate judgment(s) to be issued by the Indian Court upon the Arbitration Award.

25.     In addition, in its English Claim for Judgment, Plaintiff has requested the London Court(s) and will request the arbitration panel and/or the Indian Court to issue an award of costs of the Final Award of Costs against the Defendant Tinna as provided for in the original Award.

26.     Thus, Plaintiff also requests security for the ultimate award of costs to be issued by the panel and/or Indian/London Court(s) providing that Defendant Tinna pay Plaintiff its costs.

27.     As best as can now be estimated, Plaintiff expects to recover the following amounts pursuant to the Final Arbitration Award(s) and/or the English Claim for Judgment and/or Indian Judgments:

| A. | Principal claim: | $819,983.16 |
|----|------------------|-------------|
| B. | Interest on principal claim:<br>7% interest per annum from October 1, 1995<br>until date of award (November 19, 1998) | $193,892.73 |
| C. | Estimated post-award interest:<br>8% interest per annum from November 20, 1998<br>until estimated date of recovery (November 20, 2008) | $951,419.14 |

4

| | | | |
|---|---|---|---|
| D. | Award as to Costs; £202,260.31: | | \$402,315.93 |
| E. | Estimated interest on Costs: 7% interest per annum from November 19, 1998 until estimated date of recovery (November 19, 2008) | | \$389,540.63 |
| F. | Cost of Award as to Costs: £3,545. | | \$7,051.36 |
| G. | Estimated post-award interest on costs of Award: 8% interest per annum from October 19, 1999 until estimated date of recovery (November 19, 2008) | | \$7,145.88 |
| H. | Costs of Application: £5,602. | | \$11,142.94 |
| **Total** | | | **\$2,782,491.77** |

28.     In the alternative, Plaintiff requests security in the amount of \$2,782,491.77 from

Tinna Finex Ltd., the company to which Defendant Tinna's liabilities were allegedly transferred.

## Tinna Group, Tinna Agro and Tinna

29.     Defendant Tinna is one of several companies which are operated, controlled and

managed as a single economic enterprise known as the "TINNA GROUP," which is also named

as a Defendant here.

30.     The TINNA GROUP includes, at the very least, the Defendants Tinna and Tinna

Agro identified in the Amended Complaint, and is ultimately controlled by the Archer Daniels

Midland Company and/or its subsidiaries, alter-egos, and/or affiliates ADM Interoceanic, ADM

Cocoa and/or ADM Singapore. *See excerpt from Tinna's Website setting forth the Tinna Group*

*members and noting that both companies are joint ventures between Tinna and ADM annexed*

*hereto as Exhibit "4."*

31.     Upon information and belief, among the entities which comprise the TINNA

GROUP, there has been no attention or inadequate attention to corporate formality and the

defendants function as a single economic entity to further the ultimate goal of profit generation

to a single source.

32.     Upon information and belief, the TINNA GROUP, Tinna, and Tinna Agro have no separate, independent identities from each other.

33.     Upon information and belief, Defendants Tinna Group and/or Tinna Agro are the alter-egos of Defendant Tinna because they dominate and disregard Tinna's corporate form to the extent that the Tinna Group and/or Tinna Agro are actually carrying on Tinna's business and operations as if the same were their own, or vice versa.

34.     Upon information and belief, the Tinna Group, Tinna and Tinna Agro share commons offices and have the exact same address: No. 6 Sultanpur, Mandi Toad, Mehrauli, New Delhi, 110030, India.

35.     Upon information and belief, the Tinna Group, Tinna and Tinna Agro have common phone and facsimile numbers and e-mail addresses.

36.     Upon information and belief, the Tinna Group, Tinna and Tinna Agro use the following contact details:        Tel:          91-11-3295 9599, 3295 9600, 3295 9680

Facsimile:    91 – 11- 2680 0233

E-mail:       tocl-delhi@tinnagroup.com

37.     In addition, upon information and belief, two of Tinna's directors, Mr. Gaurav Sekhri and Mr. Vijay K. Sekhri, utilize e-mails addresses which reference the "Tinna Group"

38.     Upon information and belief, among the entities which comprise the TINNA GROUP, there is a lack of arms' length dealing among the corporations.

39.     Based on the foregoing, as well as other activities, the entities which comprise the TINNA GROUP, including the Defendants Tinna and Tinna Agro, should be considered as a single economic unit with no corporate distinction between or among them, rendering each liable for the debts of the others and the TINNA GROUP, and all assets of the TINNA GROUP susceptible to attachment and/or restraint for the debts of any and/or any number of the

6

individual entities which make up the TINNA GROUP, including but not limited to the debts of Defendant Tinna.

40.     By virtue of the foregoing, the Tinna Group and Tinna Agro are properly considered a party to the subject contract and the arbitration award as the alter egos and/or prime movers and controllers of Defendant Tinna.

41.     In the further alternative, Defendants Tinna Group, Tinna and Tinna Agro are partners and/or joint venturers such that the Tinna Group and Tinna Agro are now, or will soon be, holding assets belonging to Tinna, or vice versa.

42.     In the further alternative, Defendants Tinna Group, Tinna and Tinna Agro are affiliated companies such that Tinna Group and Tinna Agro are now, or will soon be, holding assets belonging to Tinna, or vice versa.

### Tinna and ADM Interoceanic

43.     Upon information and belief, Defendant Tinna has no separate, independent identity from the Defendant ADM Interoceanic.

44.     Upon information and belief, Defendant ADM Interoceanic is the alter-ego of Tinna because it dominates and disregards Tinna's corporate form to the extent that ADM Interoceanic is actually carrying on Tinna's business and operations as if the same were its own, or vice versa.

45.     Upon information and belief, Defendant ADM Interoceanic owns 75.01% of the shares of Defendant Tinna.

46.     Upon information and belief, Defendant Tinna Finnex of the Tinna Group holds almost all remaining shares of Tinna (24.99%).

47.     Upon information and belief, ADM Interoceanic is the Mauritius registered holding company for the Archer Daniels Midland Group.

7

48.     And, upon information and belief, the Archer Daniels Midland Company, the U.S. holding company for the Archer Daniels Midland Group, operates the Defendant Tinna as a joint venture with the Tinna Group.

49.     Upon information and belief, Tinna's board of directors includes employees, managers and/or directors of ADM Group companies.

50.     Upon information and belief, the following individuals make up Tinna's board of directors: Mr. Chong Pian Kong, Mr. Matthew John Morgenroth, Mr. Gaurav Sekhri and Mr. Vijay K. Sekhri.

51.     Upon information and belief, Mr. Chong Pian Kong and Mr. Matthew Margeroth's e-mail addresses (pfchong@admworld.com" and "matt-morenroth@admworld.com) indicate that they are affiliated with ADM World, which is a known corporate style for the ADM Group.

52.     Furthermore, upon information and belief, Mr. Morgenroth, who sits on the board of Tinna, also sits on the board of directors of both ADM Cocoa and ADM Singapore, which are identified on ADM Group's website (www.admworld.com) as ADM Group offices.

53.     Based on the foregoing, as well as other activities, the Defendants Tinna and ADM Interoceanic should be considered as a single economic unit with no corporate distinction between or among them, rendering each liable for the debts of the others, and all assets of ADM Interoceanic susceptible to attachment and/or restraint for the debts of Tinna or its alter-egos.

54.     By virtue of the foregoing, ADM Interoceanic is properly considered a party to the subject contract and the arbitration award as the alter ego and/or prime mover and controller of Defendant Tinna.

8

55.    In the further alternative, Defendant ADM Interoceanic and Tinna are partners and/or joint venturers such that the ADM Interoceanic is now, or will soon be, holding assets belonging to Tinna, or vice versa.

56.    In the further alternative, Defendants Tinna and ADM Interoceanic are affiliated companies such that ADM Interoceanic is now, or will soon be, holding assets belonging to Tinna, or vice versa.

**Defendants ADM Interoceanic, ADM Cocoa and ADM Singapore**

57.    Upon information and belief, Defendant ADM Interoceanic is a shell-corporation through which Defendants ADM Cocoa and ADM Singapore conduct business.

58.    Upon information and belief, Defendant ADM Interoceanic has no separate, independent identity from Defendants ADM Cocoa and ADM Singapore.

59.    Upon information and belief, ADM Interoceanic is the Mauritius registered holding company for the ADM Group.

60.    Upon information and belief, the entity Archer Daniels Midland Company is the parent company of ADM Cocoa and ADM Singapore and is also a holding company for the ADM Group.

61.    Defendants ADM Cocoa and ADM Singapore are the alter-egos of Defendant ADM Interoceanic (and thus of its alter-ego Tinna) because they dominate and disregard ADM Interoceanic's corporate form to the extent that ADM Cocoa and ADM Singapore are actually carrying on ADM Interoceanic's (and thus, its alter-ego Tinna's) business and operations as if the same were their own, or vice versa.

62.    Upon information and belief, Defendant ADM Cocoa and ADM Singapore, use Defendant ADM Interoceanic (and its alter-ego Tinna) as a "pass through" entity such that they can insulate itself from creditors relating to their commercial obligations.

9

63.     Upon information and belief, ADM Interoceanic's address, 342 Jalan Boon Lay, Singapore 61952, Republic of Singapore is associated with both ADM Cocoa and ADM Singapore.

64.     Furthermore, upon information and belief, Defendant Tinna (ADM Interoceanic's alter-ego), ADM Cocoa and ADM Singapore have an overlapping director:   Mr. Matthew John Morgenroth.

65.     Upon information and belief, the Defendant Tinna (ADM Interoceanic's alter-ego), is a joint venture between the Tinna Group and the Archer Daniels Midland Company, the parent, alter-ego and/or affiliate of ADM Cocoa and ADM Singapore.

66.     Upon information and belief, among the entities, Tinna, ADM Interoceanic, ADM Cocoa, and ADM Singapore, there has been no attention or inadequate attention to corporate formality and these defendants function as a single economic entity to further the ultimate goal of profit generation to a single source.

67.     Upon information and belief, the Archer Daniels Midland Company is the sole shareholder of ADM Singapore.

68.     Upon information and belief, ADM Singapore is the sole share holder of ADM Cocoa.

69.     Based on the foregoing, as well as other activities, the Defendants Tinna, ADM Interoceanic, ADM Cocoa, and ADM Singapore, should be considered as a single economic unit with no corporate distinction between or among them, rendering each liable for the debts of the others, and all assets of the Defendants ADM Cocoa, and ADM Singapore susceptible to attachment and/or restraint for the debts of any other entity named herein, including but not limited to the debts of Defendants ADM Interoceanic and its alter-ego Tinna.

10

70. By virtue of the foregoing, the Defendants ADM Cocoa and ADM Singapore are properly considered a party to the subject contract and the arbitration award as the alter egos and/or prime movers and controllers of Defendant ADM Interoceanic and its alter-ego Tinna.

71. In the further alternative, Defendant Tinna, ADM Interoceanic, ADM Cocoa, and/or ADM Singapore, are partners and/or joint venturers such that ADM Interoceanic, ADM Cocoa, and/or ADM Singapore, are now, or will soon be, holding assets belonging to Tinna, or vice versa.

72. In the further alternative, Defendants Tinna, ADM Interoceanic, ADM Cocoa, and/or ADM Singapore, are affiliated companies such that ADM Interoceanic, ADM Cocoa, and/or ADM Singapore, are now, or will soon be, holding assets belonging to Tinna, or vice versa.

73. The Defendants cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendants have, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of one or more garnishees which are believed to be due and owing to the Defendants.

74. The Plaintiff seeks an order from this court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, and also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching, *inter alia*, any assets of the Defendants held by the aforesaid garnishee for the purpose of obtaining personal jurisdiction over the Defendants, and to secure the Plaintiff's claims as described above.

11

**WHEREFORE**, Plaintiff prays:

A.     That process in due form of law issue against the Defendants, citing them to appear and answer under oath all and singular the matters alleged in the Amended Verified Complaint;

B.     That pursuant to 9 U.S.C. §§ 201. *et seq.*, the Uniform Recognition of Money Judgments Act, and/or principles of comity, this Court recognize and confirm any judgment rendered on the claims had herein as a Judgment of this Court;

C.     That since the Defendants cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching all goods, chattels, credits, letters of credit, bills of lading, effects, debts and monies, tangible or intangible, or any other funds held by any garnishee within the District which are due and owing to the Defendants, in the amount **$2,782,491.77** calculated to date to secure the Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Amended Complaint;

E.     That this Court recognize and confirm any arbitration award(s) or judgment(s) rendered on the claims set forth herein as a Judgment of this Court

F.     That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof;

G.     That in the alterative, this Court enter Judgment against the Defendants on the claims set forth herein;

12

H.    That this Court award Plaintiff its attorney's fees and costs of this action; and

I.    That the Plaintiff have such other, further and different relief as the Court

may deem just and proper.

Dated: July 14, 2008
       New York, NY

                              The Plaintiff,
                              NATIONAL ABILITY S.A.

                         By: _Coleen Cey_

                              Coleen A. McEvoy
                              Nancy R. Peterson
                              Patrick F. Lennon
                              LENNON, MURPHY & LENNON, LLC
                              420 Lexington Ave., Suite 300
                              New York, NY 10170
                              (212) 490-6050 – phone
                              (212) 490-6070 – fax
                              cam@lenmur.com
                              nrp@lenmur.com
                              pfl@lenmur.com

## ATTORNEY'S VERIFICATION

State of New York      )
                       )      ss.:      City of New York
County of New York  )

1.    My name is Coleen A. McEvoy.

2.    I am over 18 years of age, of sound mind, capable of making this

Verification, and fully competent to testify to all matters stated herein.

3.    I am an attorney in the firm of Lennon, Murphy & Lennon, LLC, attorneys for the

Plaintiff.

4.    I have read the foregoing Second Amended Verified Complaint and know the

contents thereof and believe the same to be true and accurate to the best of my knowledge,

information and belief.

5.    The reason why this Verification is being made by the deponent and not

by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now

within this District.

6.    The source of my knowledge and the grounds for my belief are the

statements made, and the documents and information received from, the Plaintiff and agents

and/or representatives of the Plaintiff.

7.    I am authorized to make this Verification on behalf of the Plaintiff.

Dated:     July 14, 2008
           New York, NY

                                              _____
                                              Coleen A. McEvoy

14

EXHIBIT "1"

FROM : XXXXX    PHONE NO. : XXXXXX    Jul. 09 2004 08:30PM P1

IN THE MATTER OF THE ARBITRATION ACTS 1950 - 1979

and

IN THE MATTER OF AN ARBITRATION

Between

NATIONAL ABILITY S.A. OF Panama                    Claimants
                                                   (Owners)

and

TINES OTTO'S CHEMICALS LTD BY A SCHEME OF
ARRANGEMENT BY ORDER OF THE HIGH COURT OF
WEST PERTH THIRD BLOCK DEN                          Respondents
                                                   (Charterers)

The "TRADDY EXPRESS"

Charterparty of April 29, 1993

FINAL AWARD

WHEREAS:

A.  By a charterparty dated April 29, 1993 on a Beepee form,
    the claimants (hereinafter referred to as "the owners")
    chartered the vessel "TRADDY EXPRESS" to the respondents
    (hereinafter referred to as "the charterers") for a voyage
    from Manila to Novorossiysk on the terms and conditions
    therein set out.

B.  The said charterparty provided in clause 29 for disputes
    between the parties to be referred to arbitration in
    London according to English law.

C.  Dispute arose between the parties for the determination of

which the owners appointed Donald Davies of 564 Queen's
Gate, 69 Upper Thames Street, London, EC4V 3BH and the
charterers appointed Michael Ferryman of Lloyd's Wharf, 2
Mill Street, London SE1 2BD to act as arbitrators on their
behalf respectively.    The said arbitrators appointed
Michael Baskerville of Glebe House, Aspall, Stowmarket,
Suffolk, IP14 6PW as the umpire in the reference in
accordance with the arbitration clause as incorporated
under English law.    The parties subsequently agreed that
the said Michael Baskerville should act as a third
arbitrator rather than as an umpire.    In the event the
said Michael Ferryman was replaced by Robert Lindsay
Gordon of Kennis House, 57-60 Aldgate High Street, London
EC3N 1AH as the arbitrator on behalf of the charterers
and the said Robert Lindsay Gordon and Donald Davies
confirmed the appointment of Michael Baskerville as the
third arbitrator in the reference.

D.    An oral hearing took place at the New Arbitration Centre,
the Courtyard, 174 Atmingate Street, London during the
period September 22/23, 1993 with both parties being
represented by counsel.    A reasoned award was requested.
The owners claimed against the charterers for a sum of
US$1,906,415.83 in respect of the alleged failure by the
charterers to discharge the cargo of potatoes.    The
charterers denied liability in full and they
counterclaimed against the owners regarding the alleged
breach of the owner to properly care for and carry the

- 2 -

17

cargo.  The charterers' counterclaims were stayed by the
tribunal because of their failure to put up security for
costs and in the early part of the September 18 hearing it
was decided that the hearing would be concerned with the
owners' claim in respect of liability and quantum.

AND SO, We said Ionald Davies, Robert Lindsay Gordon and
Michael Summerville, having accepted the burden of this
arbitration and having carefully and conscientiously listened
to the contentions of the parties through the medium of their
counsel, carefully and conscientiously considered and weighed
the facts and the evidence put before us and finding ourselves
in agreement, DO HEREBY MAKE ISSUE AND PUBLISH this our
INTERIM FINAL AWARD in respect of the matters submitted to
us:

WE FIND AND HOLD, that the owners' claim in paragraph D above
succeeds to the extent of US$18,983.16 and no more.  It
follows that the charterers' counterclaim fail.

WE AWARD AND DIRECT that the charterers shall forthwith pay to
the owners the sum of US$18,983.16 (United States dollars
eight hundred and ninety-eight thousand nine hundred and eighty
three and sixteen cents) together with interest at the rate of
7½ per centum from October 1, 1995 until the date of this our
final award in full and final settlement of the matters
referred to in paragraph D above.

- 2 -

13

WE ALSO AWARD AND ADJUDGE that the charterers shall bear and pay their own and the owners' costs in the reference (the latter to be taxed if not agreed) in addition to the cost of this our Award PROVIDED ALWAYS that if the owners shall in the first instance have paid for the cost of our award they shall be entitled to an immediate reimbursement from the charterers of the sum so paid.

WE RESERVE unto ourselves the power to tax in respect of costs the owners' costs.

IN WITNESS whereof we have hereunto set our hands in London this 19th day of November 1996.

Witness:
J.J. ——

Arbitrator appointed by the owners

Witness:

Arbitrator appointed by the charterers

Witness:

Third arbitrator

- 4 -

19

EXHIBIT "2"

IN THE HON'BLE HIGH COURT OF DELHI AT NEW DELHI

ARBITRATION EXECUTION PETITION NO.74 OF 2000

In the matter of:

National Ability S.A.                        ...Petitioners

V/s.

Tiwari Oils & Chemicals Ltd. & Anr.          ...Respondents

## PETITIONER'S SUMMARY OF SUBMISSIONS

A foreign award, dated 19/11/98 has been passed by an Arbitral Tribunal in England comprising of 3 Arbitrators in favour of the Petitioners M/s. National Ability S.A. The said Arbitration proceedings were conducted and concluded in England where both, the Petitioner (claimants) and the Respondents were arrayed as contesting parties.

The said award is passed by the Arbitral Tribunal in England, which is a country notified under the New York Convention. The said award is therefore enforceable and executable under the Arbitration and Conciliation Act, 1996.

BRIEF FACTS:

The Petitioner had by a Charter party dated 29/6/93 on it Gencon form chartered the vessel "Amazon Reefer" to the Respondent for a voyage from Kandla to Novorossiysk on terms set out therein.

2

2

Clause 29 of the said Charterparty contains the Arbitration agreement between the parties for settlement of dispute for arbitration in London according to English law.

Disputes and differences arose between the parties pursuant to which the disputes were referred to Arbitration in London.

Both parties sought substantive relief and were represented by Counsels. The Arbitral Tribunal directed mutual security to be provided for reasonable costs. The petitioner posted security for US $ 150,000/-

The Arbitral Tribunal after an oral hearing in London during 21st / 25 September 1998 passed a reasoned award in favour of the Petitioner, ordering and directing the Respondent to pay to the Petitioner a sum of US$ 8,19,983.16 together with interest @ 7% p.a. from 1st October 1995 till the date of the final award in full and final settlement of the matter. The reasoned Award dated 19/11/98 speaks for itself.

Costs were also awarded in favour of the Petitioners amounting to Stg.pds 26,762.17 being the costs of the award and Stg.pds 1,29,939.79 being the Petitioner's costs.

No Appeal filed by the Respondent. The Award dated thus is final and binding on the Respondents.

Petitioner submits that the aforesaid award is an award covered under Part II chapter 1 of the Arbitration and Conciliation Act 1996 and is enforceable in view of the provisions of Sec. 46, 47, 48 and 49 of the Arbitration

3

22/02/2007   3:20PM (GMT+5:30)

22

28-FEB-2007 15:10  FROM                          ID:81236C2295    P.4
  02-FEB-2007 17:40  FROM:THACKER, 0336P457       TO:803381250?5735  P:4

28-FEB-2007 15:10  FROM                          ID:81236C2295    P.4
  02-FEB-2007 17:40  FROM:THACKER, 66347457       TO:8233E19425?535  P:4

and Conciliation Act 1996, the Petitioner is entitled to enforce and execute the
said award as a decree through this Hon'ble Court against the Respondent.

The Petition is relying upon the judgments of the Hon'ble Supreme Court
in the case of

(D) Tharess Sthal Udion GmbH V/s Steel Authority of India Ltd. reported in
(1999 SCC page 34) and

(E) Fuest Day Lawson (AIR 2001 SC 2295) in support of his contention.

That the Petitioner had filed in Court the required evidence as
contemplated under Sec. 47 of the 1996 Act.

That no case whatsoever has been made out by the Respondents Under
Sec. 48 of the 1996 Act to resist the enforcement and execution of the said
Award.

Sec 48 of the 1996 Act reads as under:
Conditions for enforcement of foreign awards – (1) Enforcement of a
foreign award may be refused, at the request of the party against
whom it is invoked, only if that party furnishes to the court proof that-
(a) the parties to the agreement referred to in section 44 were, under
the law applicable to them, under some incapacity, or the said
agreement is not valid under the law to which the parties have
subjected it or, failing any indication thereon, under the law of the
country where the award was made; or
(b) the party against whom the award is invoked was not given proper
notice of the appointment of the arbitrator or of the arbitral
proceedings or was otherwise unable to present his case; or
(c) the award deals with a difference not contemplated by or not
falling within the terms of the submission to arbitration, or it
contains decisions on matters beyond the scope of the submission
to arbitration:
Provided that, if the decisions on matters submitted to arbitration
can be separated from those not so submitted, that part of the
award which contains decisions on matters submitted to
arbitration may be enforced; or
(d) the composition of the arbitral authority or the arbitral procedure
was not in accordance with the agreement of the parties, or, failing

took agreement, was not in accordance with the law of the country where the arbitration took place; or

(e) the award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which or under the law of which, that award was made.

(2) Enforcement of an arbitral award may also be refused if the Court finds that

(a) the subject matter of the difference is not capable of settlement by arbitration under the law of India; or

(b) the enforcement of the award would be contrary to the public policy of India.

Explanation. Without prejudice to the generality of clause (b) of this section, it is hereby declared, for the avoidance of any doubt, that an award is in conflict with the public policy of India if the making of the award was induced or affected by fraud or corruption.

(3) If an application for the setting aside or suspension of the award has been made to a competent authority referred to in clause (e) of sub-section (1) the Court may, if it considers it proper, adjourn the decision on the enforcement of the award and may also, on the application of the party claiming enforcement of the award, order the other party to give suitable security."

That the Respondents have failed to make out any case whatsoever for resisting the enforcement of the award. It is respectfully submitted that the Court is bound to enforce the award unless it is satisfied that one or more of the conditions set forth in Section 48 exists.

Court has no power to refuse Enforcement on any other ground

The Respondent No. 1 has filed their reply objection dated 1/12/1999 to the award dated 19/11/98 in which it has later also raised the following objections.

(i)    that the Respondent No. 1 is allegedly not a party to the arbitration and no award has been passed against it.

(ii)   that Respondent No. 2 is liable for the payment of the dues of the Petitioner.

5

5

(iii)  that Respondent No.1 and Respondent No.2 had entered into a scheme of arrangement under sec. 391 and 394 of the Companies Act 1956 whereby the merchant export division "spin off division" along with certain assets and liabilities were transferred into Texti Fibre Ltd. i.e. Respondent No.2.

(iv)  that by virtue of scheme of arrangement all legal and other proceedings by or against Respondent No.1 would lie against Respondent No.2

(v)  that the said scheme of arrangement sanctioned by the Hon'ble Court is binding on the Petitioner.

(vi)  that in view of the order passed by the Court in the scheme of arrangement, which allegedly was duly accepted by the Petitioner and the Arbitrators and the award has thus been passed against Respondent No.2

(vii)  that the award being a Foreign Award cannot be made a rule of court since the Petitioner is a company registered in Mexico which is allegedly not a reciprocating country under the New York Convention.

PETITIONER'S RESPONSE TO THE ABOVE SAID OBJECTIONS:

The Petitioner Submits that the charter party was with and between the Petitioner and Respondent No.1. The Petitioner was not aware and the Respondents did not inform the petitioner/ Arbitrators of the alleged scheme of arrangement during the hearing before the Arbitral Tribunal.

The petitioners were not a party and are thus not bound by the scheme of arrangement. No notice was sent or alleged to be sent to the Petitioner. Fraud was sought to be played on the Petitioner and the company court.

6

23/02/2007   5:38PM   06:47+02:00?

6.

The order is neither binding on the Petitioners and nor has it been accepted.

The Respondent No.1 was a party to the arbitration and is bound by the Award dated 19/11/98 irrespective of the Scheme of Arrangement.

In fact the Award dated 19/11/98 has been passed by the Arbitral Tribunal with the following title:

"National Ability S.A. of Panama          ...Claimants (Owners).

and

Tinna Oils & Chemicals Ltd. in a scheme of arrangement
by order of the High Court of Delhi
with Tinn Plast Ltd.                      ...Respondents (Charterers)"

It is evident therefore that Respondent No.1 is liable under the said award.

The Respondent no.2 in their scheme of arrangement have agreed to deal with the liabilities vested into them and keep Respondent no.1 indemnified from and against all liabilities, obligations, actions, claims and demands in respect thereof in consultation with Respondent no.1. The indemnity Clause is an internal mechanism / arrangement between the Respondents and the Petitioner is entitled to satisfy the Award against both the Respondents.

The Respondent No.2 is a sister concern of Respondent no.2.

Thus the Petitioner is entitled to look to both the Respondents to satisfy the Award.

22/02/2007   3:23PM (GMT+02:00)

It is submitted that Panama is in fact a country that has ratified and/or acceded to New York Convention thus, the defence that Panama is not a country that has not a reciprocating territory under New York Convention is clearly false.

The Petitioner has recently filed in Court an affidavit of Mr. Christopher Robbe dated 30/4/06, Solicitor Supreme Court England and Wales and the partner of Norton Rose, a firm of Solicitors in England, who were in conduct of the matter.

It is therefore submitted that this Hon'ble court be pleased to make the award enforceable and executable against Respondents holding them jointly and/or severally liable to make payment of the amounts claimed.

The said award becomes enforceable and executable as a decree of this Hon'ble Court against the Respondents.

(Suchita Datt)
Advocate

New Delhi
Dated January 28, 2009.

𝓑

22/02/2009   3:28PM (GMT+02:00)

EXHIBIT 3

Claimant
Thomas Adams
First Statement
26 June 2008
TA1

CLAIM No

IN THE HIGH COURT OF JUSTICE
QUEEN'S BENCH DIVISION
COMMERCIAL COURT

IN AN ARBITRATION CLAIM BETWEEN:

NATIONAL ABILITY S.A

Claimant
(Owners)

- and -

TINNA OILS & CHEMICALS LTD IN A SCHEME OF ARRANGEMENT BY ORDER OF
THE HIGH COURT OF DELHI WITH TINNA FINEX LTD

Defendant
(Charterers)

AND IN THE MATTER OF AN ARBITRATION BETWEEN:

NATIONAL ABILITY S.A

Claimant in the Arbitration

- and -

TINNA OILS & CHEMICALS LTD IN A SCHEME OF ARRANGEMENT BY ORDER OF
THE HIGH COURT OF DELHI WITH TINNA FINEX LTD

Respondents in the arbitration

---

FIRST WITNESS STATEMENT
OF THOMAS ADAMS

---

I, **THOMAS ADAMS** of Stephenson Harwood, One St Paul's Churchyard, London, EC4M 8SH will say as follows:

1,    I am a Solicitor in the firm of Stephenson Harwood at the above address. I have conduct of this matter, under the supervision of a partner, Haris Zografakis, on behalf of National Ability S.A. (*"Claimant"*) and I am duly authorised to make this statement on its behalf.

2.    Except where I say otherwise, the facts and matters stated are within my own knowledge and are true. Where the facts and matters are not within my own knowledge, they are based on instructions, documents and information supplied to me and are true to the best of my knowledge, information and belief.

3.    I make this, my first witness statement, in support of Claimant's application for Orders in the terms of the draft appended to the Claim Form:

   a)   For leave to enforce an arbitration award dated 19 November 1998 (the "Final Award") pursuant to s.26 Arbitration Act 1950 and CPR 62.18.

   b)   For leave to enforce an arbitration award dated 12 October 1999 (the "Award as to Costs") pursuant to s.26 Arbitration Act 1950 and CPR 62.18.

   c)   To enter judgment in the terms of the said Awards pursuant to s.26 Arbitration Act 1950 and CPR 62.18.

   d)   For an Order requiring the Defendant to pay interest on the Awards.

   e)   For an Order requiring the Defendant to pay the costs of this application, including the costs of entering judgment, such costs to be summarily assessed.

4.    There are now produced and shown to me marked "TA1" true copies of documents referred to in this witness statement.

**The commencement of the London arbitration proceedings**

5.    The dispute arose under a charterparty dated 29 April 1995 [TA1 pg1-12] on a Gencon form in respect of the vessel "AMAZON REEFER". The vessel sailed from Kandla, India to Novorossiysk, Russia. The Claimants made claims against the Defendants concerning

the Defendant's failure to discharge the cargo of potatoes at Novorossiysk. Defendants denied liability in full and counterclaimed against Claimants for alleged failure to care for and carry the cargo.

6.  The Claimant initiated arbitration proceedings in London by the appointment of Donald Davies of 604 Queen's Quay, 58 Upper Thames Street, London, EC4V on 1 September 1996 [TA1 pg13-14] to act as sole arbitrator. Defendants were notified of this appointment but following discussions between the parties it was agreed that each party would appoint an arbitrator and that an umpire would be appointed by those arbitrators jointly.

7.  Defendants in turn appointed Michael Ferryman of LLoyds Wharf, 2 Mill Street, London on 12 December 1995 [TA1 pgs 17-18] In the event Mr Ferryman was later replaced by Robert Lindsay Gordon of Rennie House, Aldgate High Street, London, as the arbitrator appointed by Defendants [TA1 pg 19].

8.  On 19 May 1998, the said arbitrators appointed Michael Baskerville of Glebe House, Stowmarket to act as umpire. The parties subsequently agreed that Mr Baskerville should act as the third arbitrator rather then as an umpire [TA1 pg 20-21].

9.  The arbitration was governed by the Arbitration Acts 1950-1979 and the LMAA terms.

10. On 1 May 1996 the Tribunal ruled that security for costs be provided by both parties in the sum of £150,000 [TA1 pg22-25]. Claimants agreed to do so.

11. On 27 March 1998, the Tribunal stayed the counterclaims of Defendants as they failed to put up security for costs in respect of them. In early September 1998, the Tribunal decided that the hearing would be concerned solely with Claimant's claims in respect of liability and quantum, due to Defendants continued failure to provide security.

12. Between 21-25 September 1998 a hearing took place at the New Arbitration Centre, The Courtyard, 124 Aldersgate Street, London with both parties represented by Solicitors and Counsel. Solicitors for the Defendants in the arbitration were More Fisher Brown .

13. On 19 November 1998 the Tribunal gave a reasoned Award in the following terms:

*WE FIND AND HOLD that the Owners' claim in paragraph D above succeeds to the extent of US$819,983.16 and no more. It follows that the Charterers' counterclaims fail.*

*WE AWARD AND ADJUDGE that the Charterers shall forthwith pay to the Owners the sum of US$819,983.16 together with interest at the rate of 7% per annum from October 1, 1995 until the date of this our Final Award 19 November 1998 in full and final settlement of the matters referred to in paragraph D above.*

*WE ALSO AWARD AND ADJUDGE THAT the Charterers shall bear and pay their own and the Owners' costs in this reference (the latter to be taxed if not agreed) in addition to the cost of this our Award PROVIDED ALWAYS that if the Owners shall in the first instance have paid for the cost of our award they shall be entitled to an immediate reimbursement from the Charterers of the sum so paid.*

*WE RESERVE unto ourselves the power to tax in an award of costs the Owners' costs." [TA1 p26-63]*

14.    By a fax also dated 19 November 1998, the Tribunal withheld publication of their Final Award until its costs were paid in the stated amount of £26,762.17 [TA1 pg64].

15.    The Claimant paid these costs (see letter of acknowledgment from the Tribunal dated 14 December 1998 [TA1 pg65]) and the Final Award was published. The reasons annexed to the Final Award made reference to an *Interim* Final Award in error [TA1 pg66].

16.    The parties were unable to agree on the question of the Claimant's costs of the hearing and the matter was referred back to the Tribunal for assessment of costs. Written submissions were put before the Tribunal by both parties and neither party requested a hearing.

17.    By a Final Award assessing Claimants' Solicitors' Costs dated 12 October 1999 ("Award as to Costs"), the Tribunal awarded Claimants their costs and the costs of the Tribunal as follows:

*"WE AWARD AND AJUDGE that the charterers shall forthwith pay the Owners the sum of £292,260.31 (two hundred and two thousand two hundred and sixty pounds sterling and thirty one pence), PLUS interest on the said sum at the rate of 7% from 19 November 1998 until payment is made, in full and final settlement of the Owners' solicitors' costs.*

*WE FURTHER AWARD AND ADJUDGE that the charterers shall bear and pay their own costs, together with the costs of our taxation, which we hereby tax and settle in the sum of £3,545, PROVIDED ALWAYS that if in the first instance the Owners have paid for the cost of this our taxation they shall be entitled to immediate reimbursement from the charterers of the sum so paid." [TA1 pg 67-72]*

18.    The Claimants paid the Tribunal's cost of the Award as to Costs (see Tribunals letter of acknowledgment dated 19 October 1999 TA1 pg73].

The present application

19.    The Defendant has failed to pay any of the sums ordered by the Tribunal. The Claimants have paid the Tribunal's costs of both Awards in this reference and were entitled to immediate reimbursement under the terms of those Awards. No reimbursement has been made. In our respectful submission such defaults justify the present application.

20.    The Defendant's place of business at the time of the arbitration was A-151, Mayapuri Industrial Area, Phase II, New Delhi, India. Its registered office and trading address is now at No.6 Sultanpur, Mandi Road, Mehrauli, New Delhi 110030.

21.    In an attempt to enforce the Awards, proceedings were issued in the High Court of Delhi in 1999 under the New York Convention and India's Arbitration and Conciliation Act 1996. Those legal proceedings have occupied the parties since that time. The Defendant is represented in those proceedings by Mr Sudhir Nandrajog of 103/1 Hans Bhavan, 1 Bhadur Shah Zafar Marg, New Delhi 110001, their legal representative on the Indian Court's record. The Claimant instructed this firm to make this application having become frustrated with the slow progress of the legal process in India and has sought other avenues for the recovery of sums owed by Defendants.

22.    In February 2008, the Claimants issued proceedings in the Southern District of New York in an attempt to enforce the Awards. They were successful in applying to that court for a maritime attachment of the Defendants' funds. The Claimants now make this present application in order to facilitate the enforcement of the Awards against those funds attached in New York.

Interest

23. The Tribunal awarded interest at 7% on the principal sum of the Final Award from 1 October 1995 to the date of the Final Award being 19 November 1998.

24. The Final Award did not preclude interest accruing post award, and the Claimant therefore claims simple interest on the Final Award at the rate of 8% per annum pursuant to s.20 Arbitration Act 1950 and s.17 Judgments Act 1838 (s.17(1) (26.4.1999) by S.I. 1998/2940, art. 3(a); S.I. 1998/3132).

25. In the alternative, the Claimant claims simple interest on the Final Award as a debt, at such rate as the court sees fit pursuant to s.3(1)(a) of the Law Reform (Miscellaneous Provisions) Act 1934.

26. By their Award as to Costs, the Tribunal awarded interest at the rate of 7% per annum on the Claimants costs from date of the Final Award until payment.

27. The Claimants paid the costs of the Tribunal's Award as to Costs in the amount of £3,545. The Award as to Costs required that this amount so paid be immediately reimbursed to Claimants. It has not been reimbursed. The Tribunal did not provide expressly for interest to run on that amount following its payment, but Claimants hereby claim simple interest on the Tribunal's costs from the date paid (19 October 1999) at the rate of 8% per annum pursuant to s.20 Arbitration Act 1950 and s.17 Judgments Act 1838 (s.17(1) (26.4.1999) by S.I. 1998/2940, art. 3(a); S.I. 1998/3132).

28. In the alternative, the Claimant claims simple interest on the Tribunal's costs of the Award as to Costs as a debt, at such rate as the court sees fit pursuant to s.3(1)(a) of the Law Reform (Miscellaneous Provisions) Act 1934.

29. A schedule setting out the interest accruing on the outstanding amounts can be found at p.74-77 of TA1 from which it can be seen that the amount of the Defendant's indebtedness currently stands at the aggregate of USD$1,763,381.12 and £391,420.89.

30. The usual place of business of the Claimant is 26, Bouboulinas Street, Piraeus, Greece.


The Order Sought

28. I therefore ask the Court to make an Order in the terms of the draft Order appended to this witness statement and in particular:

1.  Pursuant to s.26 Arbitration Act 1950, the Claimant do have leave to enforce the arbitration award dated 19 November 1998 (the "Final Award") and the arbitration award dated 12 October 1999 (the "Award as to Costs"), both made pursuant to an arbitration agreement contained in a Charterparty dated 29 April 1995; including leave to enforce the principle sums awarded of USD$1,000,042.48 and GBP£232,568.02 such leave to include leave to enforce post-award interest in the amount of USD$768,338.70 accruing hereafter at the daily rate of $219.19 ; and such leave to include leave to enforce post-award interest in the amount of GBP£158,852.89 accruing hereafter at the daily rate of £45.44.

2.  Pursuant to s.26 Arbitration Act 1950, Judgment be entered against the Defendant in the terms of the Final Award, namely;

" *WE FIND AND HOLD that the Owners' claim in paragraph D above succeeds to the extent of US$819,983.16 and no more. It follows that the Charterers' counterclaims fail.*

*WE AWARD AND ADJUDGE that the Charterers shall forthwith pay to the Owners the sum of US$819,983.16 together with interest at the rate of 7% per annum from October 1, 1995 until the date of this our Final Award 19 November 1998 in full and final settlement of the matters referred to in paragraph D above.*

*WE ALSO AWARD AND ADJUDGE THAT the Charterers shall bear and pay their own and the Owners' costs in this reference (the latter to be taxed if not agreed) in addition to the cost of this our Award PROVIDED ALWAYS that if the Owners shall in the first instance have paid for the cost of our award they shall be entitled to an immediate reimbursement from the Charterers of the sum so paid.*

*WE RESERVE unto ourselves the power to tax in an award of costs the Owners' costs.* "

3.  Pursuant to s.26 Arbitration Act 1950, Judgment be entered against the Defendant in the terms of the Award as to Costs, namely;

*"WE AWARD AND ADJUDGE that the charterers shall forthwith pay the Owners the sum of £202,260.31 (two hundred and two thousand two hundred and sixty pounds*

sterling and thirty one pence), PLUS interest on the said sum at the rate of 7% from 19 November 1998 until payment is made, in full and final settlement of the Owners' solicitors' costs.

*WE FURTHER AWARD AND ADJUDGE* that the charterers shall bear and pay their own costs, together with the costs of our taxation, which we hereby tax and settle in the sum of £3,543, PROVIDED ALWAYS that if in the first instance the Owners have paid for the cost of this our taxation they shall be entitled to immediate reimbursement from the charterers of the sum so paid."

4.    The costs of this application, including the costs of entering judgment, be paid by the Defendant in the amount of £5552 (being the costs incurred by Stephenson Harwood and the £50 court fee for this application.

5.    The Order be served within 7 days.

6.    The Order be served by courier on Mr Sudhir Nandrajog of 103/1 Hans Bhavan, 1 Bhadur Shah Zafar Marg, New Delhi 110001; or by courier on the Defendants at A-151, Mayapuri Industrial Area, Phase II, New Delhi, India; or by courier on the Defendants at No.6 Sultanpur, Mandi Road, Mehrauli, New Delhi 110030.

7.    Within 14 days after service of the Order, the Defendant may apply to set aside the Order. The order must not be enforced until after the end of that period, or until any application made by the Defendant within that period has been finally disposed of.

Statement of truth

I believe that the facts stated in this witness statement are true.

Signed .......................................        Date 26 June 2008

Name: Thomas Adams, Solicitor, Associate, Stephenson Harwood



NOT FOR SERVICE OUT
OF THE JURISDICTION

**Claim Form
(arbitration)**

CLAIMANTS COPY

In an arbitration claim between

Claimant
NATIONAL ABILITY S.A,
26, Bouboulinas Street, Piraeus, Greece.



In the High Court Of Justice
Commercial Court
Queen's Bench Division
Royal Courts of Justice

| | for court use only |
|---|---|
| Claim No. | 2008 · 614 |
| Issue Date | 26/6/08 |

Defendant(s)
TINNA OILS & CHEMICALS LTD IN A SCHEME OF ARRANGEMENT BY ORDER OF THE
HIGH COURT OF DELHI WITH TINNA FINEX LTD,
No.6 Sultanpur, Mandi Road, Mehrauli, New Delhi 110030

In the matter of an [intended] arbitration between

Claimant
NATIONAL ABILITY S.A,
26, Bouboulinas Street, Piraeus, Greece.

Respondent(s)  Set out the names and addresses of persons to be served with the claim form stating their role in the
arbitration and whether they are defendants.

TINNA OILS & CHEMICALS LTD IN A SCHEME OF ARRANGEMENT BY ORDER OF THE
HIGH COURT OF DELHI WITH TINNA FINEX LTD,
No.6 Sultanpur, Mandi Road, Mehrauli, New Delhi 110030

| Defendant's name and address | TINNA OILS & CHEMICALS LTD<br>No.6 Sultanpur, Mandi Road,<br>Mehrauli, New Delhi 110030 |
|---|---|

☐ This claim will be heard on:

at          am/ pm

☒ This claim is made without notice.

The court office at Strand, London, WC2A 2LL

When corresponding with the court, please address forms or letters to the Court Manager and quote the claim number

N8 Claim form (arbitration)                                                                Laserform international 6/07

| Claim No. |  |
|-----------|--|

Remedy claimed and grounds on which claim is made

The claimant applies for orders in terms of drafts appended to the First Witness Statement of Haris Zografakis submitted in support of the application; and particularly:

1.  Pursuant to s.26 Arbitration Act 1950, the Claimant do have leave to enforce the arbitration award dated 19 November 1998 (the "Final Award") and the arbitration award dated 12 October 1999 (the "Award as to Costs"), both made pursuant to an arbitration agreement contained in a Charterparty dated 29 April 1995; including leave to enforce the principle sums awarded of USD$1,000,042.48 and GBP£232,568.02 such leave to include leave to enforce post-award interest in the amount of USD$768,338.70 accruing hereafter at the daily rate of $219.19 ; and such leave to include leave to enforce post-award interest in the amount of GBP£158,852.89 accruing hereafter at the daily rate of £45.44.

2.  Pursuant to s.26 Arbitration Act 1950, Judgment be entered against the Defendant in the terms of the Final Award

3.  Pursuant to s.26 Arbitration Act 1950, Judgment be entered against the Defendant in the terms of the Award as to Costs.

4.  The costs of this application, including the costs of entering judgment, be paid by the Defendant in the amount of £5552 (being the costs incurred by Stephenson Harwood and the £50 court fee for this application.

5.  The Order be served within 7 days.

6.  The Order be served by courier on Mr Sudhir Nandrajog of 103/1 Hans Bhavan, 1 Bhadur Shah Zafar Marg, New Delhi 110001; or by courier on the Defendants at A-151, Mayapuri Industrial Area, Phase II, New Delhi, India; or by courier on the Defendants at No.6 Sultanpur, Mandi Road, Mehrauli, New Delhi 110030.

7.  Within 14 days after service of the Order, the Defendant may apply to set aside the Order. The order must not be enforced until after the end of that period, or until any application made by the Defendant within that period has been finally disposed of.

Claim No.

The claimant seeks an order for costs against
The Defendant for:

• The costs of this application.
• The costs of enforcing judgment.

Statement of Truth
* (I believe) (The Claimant believes) that the facts stated in these particulars of claim are true.
* I am duly authorised by the claimant to sign this statement

Full name Thomas Adams

Name of claimant's solicitor's firm    Stephenson Harwood

signed _____    position or office held  Associate
  *(Claimant) (Claimant's solicitor)    (if signing on behalf of firm or company)

*delete as appropriate

Stephenson Harwood
One St. Paul's Churchyard
London
EC4M 8SH

DX 64    Chancery Lane

Claimant's or claimant's solicitor's address to
which documents should be sent if different from
overleaf. If you are prepared to accept service by
DX, fax or e-mail, please add details.

EXHIBIT 4

Tinna Oils Manufacturing Company in India                                    Page 1 of 1



# Tinna Oils & Chemicals Ltd.
a joint venture between Tinna Group and M/s Archer Daniels Midland Co., USA of USA.





## Tinna Oils & Chemicals Ltd,
a joint venture of Tinna Group and M/s. Archer Daniels Midland Co., USA

Tinna Oils & Chemicals Ltd,
the flagship company of the group comprises of:

> The Companies
> About Us
> Vision and Mission
> Our Presence

- Oilseed processing division at Latur, Maharashtra
- Animal Health & Nutrition division at Latur, Maharashtra
- Biodiesel production plant at Latur, Maharashtra
- The Cargo Handling, Stevedoring and Warehousing division at Vizag seaport, Andhra Pradesh
- The Specialty Ingredients Division operated out of Mumbai

Tinna Agro Industries Ltd,
a joint venture of Tinna Group and M/s. Archer Daniels Midland Co., USA

The Oilseed processing division at Dharwad, Karnataka which become operational from end 2006 onwards has been named as Tinna Agro Industries Ltd.

The head office of both the companies is at New Delhi.

Home | Cargo Handling | Animal Health And Nutrition | Health Oil | Bio Diesel | Cocoa Powder | Agri business centres | Pharmaceuticals | Feed Ingredients | Enquiry

© Copyright Tinna Group. All Rights Reserved with Sun Company Ltd.

Tina Agro Industries