UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NATIONAL ABILITY S.A.,

                              Plaintiff,

                    - against –

TINNA OILS & CHEMICALS LTD.,
TINNA FINEX LTD., TINNA GROUP,
TINNA AGRO INDUSTRIES LTD., ADM
INTEROCEANIC LIMITED, ADM COCOA
PTE. LTD. and ARCHER DANIELS
MIDLAND SINGAPORE PTE. LTD.,

                              Defendants.

Case No. 07 Civ. 9913

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE *EX PARTE*
ATTACHMENTS AND DISMISS SECOND AMENDED COMPLAINT
AS AGAINST ADM COCOA PTE. LTD. AND TINNA OILS & CHEMICALS LTD.

BAKER & McKENZIE LLP
1114 Avenue of the Americas
New York, New York 10036
(212) 626-4100

Attorneys for  ADM Cocoa Pte. Ltd.
and Tinna Oils & Chemicals Ltd.

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................2

FACTUAL BACKGROUND ..................................................................................3

   The Underlying Charter Transaction ...............................................................3

   The London Arbitration....................................................................................4

   The Scheme of Arrangement ...........................................................................4

   The Arbitral Award..........................................................................................4

   The Delhi Enforcement Proceedings ..............................................................5

   The Delhi Final Order .....................................................................................6

   The Instant Proceedings ..................................................................................7

ARGUMENT ........................................................................................................10

I.    PLAINTIFF HAS THE BURDEN TO SHOW WHY THE ATTACHMENT SHOULD NOT BE VACATED .................................................................10

II.   THE ATTACHMENT SHOULD BE VACATED AND THE COMPLAINT DISMISSED ON THE GROUNDS OF COLLATERAL ESTOPPEL.......................12

   A.   The Standard ........................................................................................12

   B.   The Facts in this Case ..........................................................................14

III.  THE ATTACHMENT SHOULD BE VACATED AS TO ADM COCOA BECAUSE THE PLAINTIFF DOES NOT HAVE A VALID PRIMA FACIE MARITIME CLAIM AGAINST ADM COCOA ......................................15

   A.   Plaintiff Alleges No Valid Prima Facie Alter Ego Claim Against ADM Cocoa .........16

      (1)   Choice of Law and Pleading Standard Under Rule E(2)(a)....................17

      (2)   Alter Ego Factors ..........................................................................18

      (3)   Analysis ........................................................................................18

         (a)   Plaintiff Provides No Facts in Support of its Alter Ego Theory Against ADM Cocoa ........................................................21

         (b)   National Ability Presents No Claim of Fraud .......................................22

(c)     National Ability Has Not Alleged that ADM Cocoa Dominated and
        Controlled TOCL.................................................................................................. 23

IV.     THE ATTACHMENTS SHOULD BE DISMISSED BECAUSE NATIONAL
        ABILITY HAS SUFFICIENT SECURITY FOR ITS CLAIMS UNDER THE
        ARBITRAL AWARD ....................................................................................... 25

V.      ADM COCOA AND TOCL SHOULD BE AWARDED COSTS AND
        ATTORNEYS' FEES........................................................................................ 27

CONCLUSION ................................................................................................................. 29

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE
*EX PARTE* ATTACHMENTS AND DISMISS SECOND AMENDED COMPLAINT
AS AGAINST ADM COCOA PTE. LTD. AND TINNA OILS & CHEMICALS LTD.**

Defendants ADM Cocoa Pte. Ltd. ("ADM Cocoa") and Tinna Oils & Chemicals Ltd. ("TOCL") (ADM Cocoa and TOCL, collectively, "Defendants") respectfully submit this Memorandum of Law, together with the accompanying Declaration of Yeong Chye dated July 28, 2008 ("Chye Decl."), and the exhibits attached thereto, and the Declaration of Richard De Palma dated August 5, 2008 ("De Palma Decl."), and the exhibits attached thereto, all in support of the motion of ADM Cocoa and TOCL, made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Rules E(2)(a) and E(4)(f) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (the "Maritime Rules"), 28 U.S.C. § 1927 and the Court's inherent powers, for an Order:

(1) Vacating, as against ADM Cocoa and TOCL, the attachments obtained herein *ex parte* pursuant to Rule B of the Maritime Rules, dated November 9, 2007 (the "Original Attachment"), dated February 28, 2008 (the "*Ex Parte* Attachment") and dated July 16, 2008 (the "Second Amended *Ex Parte* Attachment") (collectively, the "*Ex Parte* Attachments");

(2) Dismissing, as against ADM Cocoa and TOCL, plaintiff's Second Amended Complaint herein dated July 14, 2008 (the "Second Amended Complaint") in its entirety;

(3) Awarding to ADM Cocoa and TOCL the damages they sustained as a result of the prosecution of these proceedings and the wrongful attachment of their assets, including, but not limited to, their costs and reasonable attorneys fees; and

(4) Granting to ADM Cocoa and TOCL such other and further relief as the Court deems just and proper.

## PRELIMINARY STATEMENT

This case involves the mis-use, by plaintiff here and its counsel, of the extreme remedy of *ex parte* attachment orders under Rule B of the Maritime Rules to attach nearly $3 million in funds here in this District.

Specifically, plaintiff National Ability S.A. ("National Ability"), through counsel, has improperly obtained a series of separate *ex parte* attachment orders against ADM Cocoa (and TOCL) based upon conclusory and baseless allegations of "alter ego" which are insufficient as a matter of law. Essentially, Plaintiff alleges in conclusory fashion that ADM Cocoa is the "alter ego" of defendant ADM Interoceanic Limited, which is alleged in turn to be the "alter ego" of TOCL, and therefore, ADM Cocoa is obligated to plaintiff for a claim which has been reduced to a 1998 Arbitral Award.

Although plaintiff's conclusory alter ego allegations are insufficient as a matter of law, and will be addressed herein, what is more disturbing is that plaintiff and its counsel have failed to advise this Court in seeking these extreme remedies *ex parte* that plaintiff had already obtained sufficient and adequate security for its claims in an enforcement proceeding on the Arbitral Award that it commenced in 1998 in the High Court of Delhi, India, against TOCL and defendant Tinna Finex Ltd. ("Tinna Finex"). Under the case law of this Circuit and this District, that fact alone is sufficient to require vacatur of the *Ex Parte* Attachments.

However, even worse, in obtaining its most recent July 16th Second Amended *Ex Parte* Attachment from this Court, Plaintiff and its counsel have failed to advise the Court that nearly five weeks prior, in June 2008, the Delhi High Court in India ruled in plaintiff's enforcement proceedings there that TOCL had no liability on the Arbitral Award, a decision entitled to res judicata and issue preclusive effect here. Nonetheless, plaintiff used the Second Amended *Ex Parte* Attachment to attach further assets of both ADM Cocoa and TOCL, indeed, in excess of that

2

allowed by the Court in the very order relied upon by plaintiff.

Accordingly, for the reasons set forth herein, pursuant to Rules B and E of the Maritime Rules and the Local Admiralty and Maritime Rules of this Court, ADM Cocoa and TOCL are entitled to a prompt adversary hearing to be scheduled by the Court to present the instant application for dismissal of the Second Amended Complaint as to them and vacatur of the *Ex Parte* Attachments. In addition, because it is clear that plaintiff and its counsel have moved for the extreme remedies of *ex parte* attachment under Rule B knowing such requests were legally impermissible, and because they failed to apprise the Court of significant facts that would have resulted in a denial of such requests, it is respectfully submitted that ADM Cocoa and TOCL are entitled to an award of their actual damages, costs and reasonable attorneys fees suffered as a result of plaintiff and its counsel's wrongful prosecution of this case and wrongful attachment of their assets.

## FACTUAL BACKGROUND

### *The Underlying Charter Transaction*

Defendant TOCL entered into a charter party dated April 4, 1995 with plaintiff National Ability chartering the vessel, "Amazon Reefer," to carry 8,000 tons of potatoes from Port of Kandla, Gujarat to Port of Novorossiysk in Russia. TOCL was the charterer and shipper of the cargo.

Upon arrival, the discharging of the cargo was halted because the potato cargo had deteriorated. Due to Russian quarantine restrictions, the Russian buyers could not accept the potatoes. Eventually, after a month's delay, during which time the parties argued about who should bear responsibility for discharging the ruined cargo, the rotten potatoes were dumped into the Atlantic Ocean, near Spain.

3

### *The London Arbitration*

In or around October of 1995, National Ability filed a request for arbitration under the charter party agreement in London, seeking an award against TOCL for demurrage, detention and dumping and cleaning costs, totaling approximately $1 million. TOCL counterclaimed for the value of the lost cargo (however, such counterclaims were set aside by the Tribunal).

### *The Scheme of Arrangement between TOCL and Tinna Finex*

While the arbitration proceedings were pending, TOCL filed a petition with the High Court of Delhi at New Delhi (Company Petition No. 303 of 1997) for approval and sanction by the Court of a Scheme of Arrangement (the "Scheme of Arrangement") between TOCL and Tinna Finex pursuant to which TOCL would transfer to Tinna Finex a certain set of assets and liabilities defined in the Scheme of Arrangement as the "Spin Off Division."

At the time of the filing of the petition as well as at the time of the charter transaction with National Ability, TOCL was a public company. Public notice of the petition and proceedings were provided as required by law to all shareholders and creditors of TOCL.

Approval of a Scheme of Arrangement under Indian law is similar in nature to Court confirmation of a Plan of Reorganization under U.S. Bankruptcy law.

On or about November 7, 1997, the High Court of Delhi entered an Order approving the Scheme of Arrangement. Pursuant to the Scheme of Arrangement, the Spin Off Division was transferred to Tinna Finex. As a result thereof, any claims or liabilities of TOCL deriving from the transaction with National Ability (including any liability on the Arbitral Award) were transferred to Tinna Finex. De Palma Decl. at ¶¶ 12-16; Exhibit ("Ex.") E at ¶¶ 7-9, 22-26.

### *The Arbitral Award*

Accordingly, Tinna Finex was made a party to the London arbitration proceedings between National Ability and TOCL. The arbitration hearings took place in London in 1998 and resulted in an

arbitral award against TOCL and Tinna Finex in the amount of $819,983.16 plus costs (the "Arbitral Award"). Indeed, as the Court can see, the caption on the Arbitral Award reads as follows:

> IN THE MATTER OF THE ARBITRATION ACTS 1950 – 1979
> And
> IN THE MATTER OF AN ARBITRATION
> Between
> NATIONAL ABILITY S.A. of Panama                Claimants
>                                                 (Owners)
>
> and
> **TINNA OILS & CHEMICALS LTD. IN A SCHEME OF**       **Respondents**
> **ARRANGEMENT BY ORDER OF THE HIGH COURT OF**        **(Charterers)**
> **DELHI WITH TINNA FINEX LTD.**

(bold added). De Palma Decl. at ¶¶ 17-19; Ex. E at ¶ 25.

### *The Delhi Enforcement Proceedings*

Subsequent to issuance of the Arbitral Award, on or about August 7, 1998, National Ability filed a petition in the High Court of Delhi at New Delhi, O.M.P. No. 173 of 1998, thereby commencing the Delhi Enforcement Proceedings, seeking to enforce the Arbitral Award against TOCL and Tinna Finex. In the Delhi Enforcement Proceedings, among other things, National Ability sought and obtained an order that TOCL and Tinna Finex, their "directors, agents, and representatives be restrained by ad-interim injunction restraining them from alienating, tran[s]ferring, parting with possession, encumbering and/or dealing with any moveable and/or immoveable assets of the company any manner anywise and from operating the Bank Account with Syndicate Bank, Mayapuri, New Delhi" (the "Delhi Collateral Freezing Order"). De Palma Decl. at ¶¶ 21-22; Ex. A.

The purpose of the Delhi Collateral Freezing Order was to secure sufficient assets and collateral to satisfy the Arbitral Award in the event that the Delhi Enforcement Proceedings against TOCL and Tinna Finex were successful. TOCL and Tinna Finex both appeared in the Delhi Enforcement Proceedings by counsel. TOCL and Tinna Finex both appeared in the Delhi Enforcement Proceedings through their own separate respective counsels. De Palma Decl. at ¶¶ 21-22; Ex. A.

5

At no time did National Ability join or attempt to join ADM Cocoa or any of the other named defendants in the instant action as parties to the Delhi Enforcement Proceedings. De Palma Decl. at ¶ 24.

Pursuant to the request by National Ability, the High Court of Delhi granted National Ability's application and issued the Delhi Collateral Freezing Order on August 13, 1998. De Palma Decl. at ¶ 25; Exs. C, D.

The Delhi Collateral Freezing Order remained in effect through the beginning of National Ability's Rule B Attachment proceeding until June 4, 2008, when the Delhi High Court issued its final Order in the Delhi Enforcement Proceedings (the "Delhi Final Order"). De Palma Decl. at ¶¶ 26-27; Ex. E. Thereafter, it was continued against Tinna Finex.

### *The Delhi Final Order*

On June 4, 2008, the Delhi High Court considered and ruled on whether TOCL's liability to National Ability under the Arbitral Award survived the Scheme of Arrangement ("Delhi Final Order). De Palma Decl. at Ex. E. The High Court concluded that its liability for the Award did not survive the Scheme of Arrangement. De Palma Decl. at Ex. E. The Delhi Final Order fully and finally disposes of the action against TOCL by ruling that all of the liabilities of TOCL, including but not limited to any claim of TOCL held by National Ability, passed to Tinna Finex pursuant to the Scheme of Arrangement. Id. The Final Order states:

> With effect from the date of arrangement, i.e. 1.4.1997, all assets and liabilities of [TOCL] were to vest in [Tinna Finex], without any further act, deed or thing, by operation of law. The Scheme was approved by this Court on 7.11.1997. . . . [Tinna Finex] even took over the litigation and contested the matter before the Arbitral Tribunal. . . . [National Ability] never denied that [Tinna Finex] only was liable.

De Palma Decl., Ex. E at ¶¶ 8, 9.

The Delhi High Court went on to conclude that because National Ability did not contest the transference of liability from TOCL to Tinna Finex in the original Scheme of Arrangement, they had

no right to attempt to do so now: "The petitioner [National Ability] has not challenged the Scheme of Arrangement even after coming to know of the same and, therefore, in these proceedings it is estopped from challenging the Scheme or denying the legal consequences." De Palma Decl., Ex. E at ¶ 9.

Since National Ability's claim against ADM Cocoa rests solely on its liability as TOCL's alleged "alter ego," the Delhi Final Order on TOCL's liability is of tremendous relevance.

The assets of Tinna Finex continue to be subject to the Delhi Collateral Freezing Order and will continue to be until the Arbitral Award is satisfied and paid. De Palma Decl., Ex. E at ¶ 31.

### _The Instant Proceedings_

Plaintiff originally commenced this action only against defendants TOCL and Tinna Finex Ltd. on November 9, 2007 by filing of a verified complaint dated November 9, 2007 (the "Original Complaint"). The Original Complaint is verified by an attorney – not a person with actual knowledge from the Plaintiff itself. De Palma Decl. at ¶¶ 31-33; Ex. G.

Essentially, the Original Complaint outlines the facts relative to the 1985 charter transaction and the subsequent issuance of the Arbitral Award in favor of Plaintiff and against TOCL and Tinna Finex in 1998 in the amount of just over $1 million. Id.

There is no mention of ADM Cocoa in the Original Complaint. Id.

Based upon the Original Complaint and the attorney Affidavit of Nancy R. Peterson sworn to November 9, 2007, the Court entered an _Ex Parte_ Order for Process of Maritime Attachment and Garnishment dated November 9, 2007 against TOCL and Tinna Finex (i.e., the Original Attachment). De Palma Decl. at ¶¶ 34-35.

Plaintiff's counsel proceeded with "daily service" of the Original Attachment on numerous garnishee banks within the City of New York. According to the letter dated February 29, 2008 from Plaintiff's counsel to the Court, Plaintiff was not able to find assets of either TOCL or Tinna Finex to attach. De Palma Decl. at ¶¶ 34-35.

Having found no assets of TOCL or Tinna Finex - the actual parties to the Arbitral Award - Plaintiff filed an amended complaint (the "Amended Complaint"), again verified by an attorney (not the client), adding five new "defendants," including ADM Cocoa. De Palma Decl. at ¶¶ 35-38; Ex. H.

According to Plaintiff's counsel, the reason for adding the new defendants is the belief by Plaintiff's counsel that such newly-added defendants "will be sending funds through New York." De Palma Decl. at  ¶¶ 35-38; Ex. H.

The basis of liability against ADM Cocoa (and the other newly added defendants) stated in the Amended Complaint is the set of conclusory allegations by Plaintiff that ADM Cocoa is the "alter ego" of TOCL.  Indeed, a close review of the Amended Complaint shows that Plaintiff does not allege any facts supporting any alter ego claim as against ADM Cocoa.  In any event, as set forth fully in the Chye Declaration, any such allegations, conclusory though they be, are false.  De Palma Decl. at ¶¶ 35-38; Exs. H, I.

Based upon the Amended Complaint and an amended attorney affidavit[1] dated February 28, 2008, the Court issued a second *Ex Parte* Order for Process of Maritime Attachment and Garnishment (i.e., the *Ex Parte* Attachment) against, among others, ADM Cocoa.  Apparently, Plaintiff's counsel then re-commenced "daily service" of the second *Ex Parte* Attachment, ultimately attaching ADM Cocoa's funds in New York. De Palma Decl. at ¶ 39; Ex. J.

On or about March 10, 2008, Plaintiff's counsel sent a letter dated March 10, 2008 (the "March 10 Letter") to TOCL, Tinna Finex and ADM Cocoa, enclosing the Summons and Amended Complaint in this action. The March 10 Letter, without indicating which of the three addressees are implicated

---

[1] In making the application for the *Ex Parte* Attachment to this Court, plaintiff's counsel did not inform the Court that plaintiff has already obtained adequate security for its claims under the Arbitral Award pursuant to the Collateral Freezing Order issued in the High Court of Delhi, India, in proceedings commenced there to enforce the Arbitral Award against TOCL and Tinna Finex.

(TOCL, Tinna Finex or ADM Cocoa), states that "your [?] property was attached at Citibank on or about March 6, 2008 in the amounts of $148,402.75, $128,380.00 and $102,830.71 and March 10, 2008 in the amounts of $80,250.96, $80,388.50, $636,866.03, $12,920.73 and $187,057.50. Your [?] property was further attached at HSBC on or about March 7, 2008 in the amounts of $28,116.68 and $28,121.28." Chye Decl. at ¶ 9; Ex. O.

Subsequent to receiving the March 10 Letter, ADM Cocoa received notice from its account managers at Citibank that $2,339,161.87 of ADM Cocoa's funds had been attached pursuant to the Ex Parte Attachment. Additionally, ADM Cocoa's investigation has confirmed that Plaintiff has also attached an additional $56,237.96 of ADM Cocoa's funds at HSBC. Chye Decl. at ¶¶ 19-21.

On July 14, 2008, National Ability sent a letter to the Court, attaching thereto a Second Amended Complaint. The Second Complaint, increases the amount requested of the Court for security against the defendants. Although the Delhi High Court had made a final ruling in the enforcement proceedings, plaintiff's counsel made no reference in the Second Amended Complaint to that ruling, which bears direct relevance to this case. Chye Decl. at ¶ 9; Ex. O.

On July 21, 2008, National Ability sent a letter to TOCL, Tinna Finex and ADM Cocoa once again giving notice of further attached funds (the "July 21 Letter"). The July 21 Letter, failing once again to indicate which of the three addressees are implicated (TOCL, Tinna Finex or ADM Cocoa), states that "your [?] property was attached at Citibank on or about July 21, 2008 in the approximant [sic] amount of $461,158.81. Your [?] property was further attached at J.P. Morgan Chase on or about July 21, 2008 in the amounts of $5,500.00." The July 21 Letter also enclosed the Second Amended Complaint. Chye Decl. ¶¶ 1-12; Chye Decl. Ex. P.

To date, a confirmed total of $2,395,399.83 in funds – at least $79,566.87 more than permitted by the *Ex Parte* Attachment, has been attached, plus an amount as yet unspecified amount attached on July 21 2008. Chye Decl. ¶¶ 1-12; Chye Decl. Ex. P.

9

TOCL has recently learned that of the additional attached funds, $121,780.00 pertain to TOCL's assets. The balance of the funds appear to be those of ADM Cocoa.

## ARGUMENT

I. **PLAINTIFF HAS THE BURDEN TO SHOW WHY THE *EX PARTE* ATTACHMENTS SHOULD NOT BE VACATED**

Pursuant to Rules B and E(4)(f) of the Maritime Rules and the Local Admiralty and Maritime Rules of this Court, ADM Cocoa and TOCL are entitled to a prompt adversary hearing following an attachment of their assets. Local Rule E.1 specifies:

> The adversary hearing following arrest or attachment of garnishment that is called for in supplemental Rule E(4)(f) shall be conducted by a judicial officer within three (3) court days, unless otherwise ordered.

Local R. E.1.

The purpose of the hearing is to ensure the constitutional requirement of due process of the attachment by permitting ADM Cocoa and TOCL the opportunity to be heard and to obtain from the Court prompt post-attachment scrutiny. Maritime Rule E(4)(f); advisory committee's note to the 1985 Amendments. Rule E(4)(f) clearly establishes that in a Rule E hearing, the plaintiff bears the burden of proving why the attachment should not be vacated:

> Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief consistent with these rules.

Maritime Rule E(4)(f).

Both courts and legal scholars recognize that this burden is considerable given the *ex parte* nature of the attachment procedure under Rule B. See, e.g., 29 James W.M. Moore et al., Moore's Federal Practice § 7.05.04[5] (3r ed. 2005); Ullises Shipping Corp. v. FAL

Shipping Co. Ltd., 415 F. Supp. 2d 318, 323 (S.D.N.Y. 2006), overruled on other grounds by Aqua Stoli Shipping Ltd. v. Gardiner Smith Pty Ltd., 460 F. 3d 434, 445 (2d Cir. 2006).

The Court of Appeals for the Second Circuit recently reaffirmed plaintiff's burden of demonstrating that the requirements of Rule B have been met, stating that "[a] district court must vacate an attachment if the plaintiff fails to sustain its burden of showing that he has satisfied the requirements of Rules B and E." Aqua Stoli, 460 F. 3d at 445; see also Dolco Invs., Ltd. v. Moonriver Dev., Ltd., 486 F. Supp. 2d 261, 266 (S.D.N.Y. 2007) (applying plaintiff's burden under Aqua Stoli and finding plaintiff had not met its burden of asserting valid claim to pierce corporate veil); T&O Shipping, Ltd. v. Source Link Co., No. 06-CV-7724, 2006 U.S. Dist. LEXIS 88153, at *12-14 (S.D.N.Y. Dec. 6, 2006) (holding that if plaintiff fails to demonstrate that it has met the requirements of Rules B and E, district court must vacate the attachment); Ogi Oceangate Transp. Co. v. RP Logistics Pvt. Ltd., 06 Civ. 9441, 2007 U.S. Dist. LEXIS 74180 (S.D.N.Y. Oct. 4, 2007) (finding vacatur appropriate under Aqua Stoli because plaintiff had failed to make a valid prima facie showing of its claim). Thus, plaintiff must show: (a) it has a prima facie admiralty claim; (b) the named defendants cannot be found within district; (c) the attached defendant's property was within the district; and (d) that there is no statutory or maritime law bar to the attachment. Aqua Stoli, 460 F.3d at 445.

Additionally, the standard for a valid prima facie claim under the admiralty rules is more stringent that that required by the Federal Rules of Civil Procedure. See, e.g., United States v. 4492 S. Livonia Rd., 889 F.2d 1258, 1266 (2d Cir. 1989). Generally, when an action is brought in federal court, a complaint must contain, inter alia, only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The statement must merely give the defendant fair notice of the nature of plaintiff's claim and the grounds on which it rests. Conley v. Gibson, 355 U.S. 41, 47 (1957).

11

However, Rule E(2)(a) of the Maritime Rules requires that, in an action in personam with process of maritime attachment and garnishment, a complaint "state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading."  Maritime Rule E(2)(a).  Thus, National Ability must adhere to this more stringent standard of particularity in order to state a valid claim against ADM Cocoa and TOCL.  See, e.g., Tide Line, Inc. v. Eastrade Commodities, Inc., 06 CV 1979, 2006 U.S. Dist. LEXIS 95870, at *6 (S.D.N.Y. Aug. 15, 2006) (stating the standard for particularity of maritime attachment complaints is more stringent that those required by the Federal Rules of Civil Procedure).

Additionally, the Court held that a district court must vacate the attachment if:

> i) the defendant is subject to suit in a convenient adjacent jurisdiction, or ii) the plaintiff could obtain in personam jurisdiction over the defendant in the district where the plaintiff is located, or iii) the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise.

Aqua Stoli, 460 F.3d at 445; see also, Dolco Invs. Ltd., 486 F. Supp. 2d 261, 266 (holding that vacatur was appropriate because the defendant had posted a guarantee for amount of maritime claim in France which was sufficient security); Ogi Oceangate Transp., 2007 U.S. Dist. LEXIS 74180 (finding vacatur appropriate under Aqua Stoli because "plaintiff and defendant are both present in [India] and would be subject to jurisdiction there," thus allowing attachment would be allowing an end-run around the system to attach funds in New York).

## II.  THE *EX PARTE* ATTACHMENTS SHOULD BE VACATED AND THE COMPLAINT DISMISSED ON THE GROUNDS OF COLLATERAL ESTOPPEL

### A.  The Standard

In the instant case, the *Ex Parte* Attachments should be vacated and the Second Amended Complaint dismissed in its entirety because they are barred by the equitable doctrine of collateral estoppel.  It is well settled that a plaintiff may not re-litigate issues material to a case that were

previously decided by a court of competent jurisdiction, even if the defendant was not a party to the prior action. The federal common-law doctrine of collateral estoppel forbids a court to reconsider an issue at trial that has already been decided in a prior proceeding. See Montana v. United States, 440 U.S. 147, 153 (1979). "[A] 'right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction. . . cannot be disputed in a subsequent suit between the same parties or their privies."[2] Id. (quoting Southern Pacific R.R. v. United States, 168 U.S. 1, 48-49 (1897)); see also Mendoza, 464 U.S. at 158. So long as the same issue was determined by a valid final judgment, the prior court's determination is valid and binding on parties in any successive litigation involving that issue. Id. ("Collateral estoppel, like the related doctrine of res judicata, serves to 'relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." (citing Allen v. McCurry, 449 U.S. 90, 94 (1980)).

When a defendant asserts this doctrine against the plaintiff it is referred to as "defensive collateral estoppel or issue preclusion," and when a defendant who was not a party to the original action asserts the doctrine is it called "non-mutual defensive collateral estoppel or issue preclusion." See MOORE'S FEDERAL PRACTICE §132.04[2][c][i]. The U.S. Supreme Court approved use of non-mutual defensive collateral estoppel finding that "the plaintiff was estopped from asserting a claim that the plaintiff had previously litigated and lost against another defendant." Blonder-Tongue, 402

---

[2] Historically, collateral estoppel could be asserted by a party that had litigated the issue previously and only against a party that had litigated the issue previously. Thus, a "mutuality requirement" existed. In 1971 the Supreme Court, in an effort to improve judicial efficiency, removed the mutuality requirement. See Blonder-Tongue Laboratories, Inc. v. Univ. of Illinois Found., 402 U.S. 313 (1971); see also United States v. Mendoza, 464 U.S. 154, 158 (1980) ("In furtherance of those policies, this Court in recent years has broadened the scope of the doctrine of collateral estoppel beyond its common-law limits.... It has done so by abandoning the requirement of mutuality of parties . . . and by conditionally approving the 'offensive' use of collateral estoppel by a nonparty to a prior lawsuit."); RESTATEMENT, JUDGMENTS 2D § 29 (1982) ("A party precluded from relitigating an issue with an opposing party is also precluded from doing so with another person.").

U.S. 313; see also Parklane Hosiery Co. v. Shore, 439 U.S. 322, 329 (1979) (holding that issue litigated in prior suit estopped later plaintiffs from litigating it in current suit).  In considering the issue, the Court noted that policy and equity concerns favor application of collateral estoppel even where the parties in the present suit are not identical to the parties in the previous suit.  Blonder-Tongue, 402 U.S. at 328-29 ("The broader question is whether it is any longer tenable to afford a litigant more than one full and fair opportunity for judicial resolution of the same issue.  In any lawsuit where a defendant, because of the mutuality principle, is forced to present a complete defense on the merits to a claim which the plaintiff has fully litigated and lost in a prior action, there is an arguable misallocation of resources.").

## B.    The Facts in this Case

National Ability is attempting to get a second bite at the apple by asking the Southern District of New York to rule in its favor on a liability issue that has just been decided against it in the Delhi Enforcement Proceedings on June 4, 2008. De Palma Decl. at ¶¶ 26-29; Ex. E at ¶¶ 8, 9 25, 31-32.  The High Court ruled that TOCL's liability to National Ability did not survive the Scheme of Arrangement. De Palma Decl., Ex. E at ¶¶ 8,9 25, 31-32.  Yet National Ability seeks to hold TOCL, and by alleged extension ADM Cocoa, as its supposed "alter ego," liable to National Ability for the Arbitral Award in direct contradiction of the Final Order.  Since National Ability already fully litigated the issue of liability, and received a final order from the Delhi High Court, it is estopped from relitigating that issue again.  The Delhi High Court was unequivocal in its finding that TOCL has no liability to National Ability on the Arbitral Award.  De Palma Decl., Ex. E at ¶¶ 8,9 25, 31-32.  Therefore, the *Ex Parte* Attachments and the Second Amended Complaint must be dismissed against TOCL, and by extension ADM Cocoa because the Delhi High Court has finally disposed of National Ability's claim against TOCL for liability under the Arbitral Award.

14

### III. THE *EX PARTE* ATTACHMENTS SHOULD BE VACATED AS TO ADM COCOA BECAUSE THE PLAINTIFF DOES NOT HAVE A VALID PRIMA FACIE MARITIME CLAIM AGAINST ADM COCOA

Even if TOCL's liability to National Ability was not fully and finally disposed of by the Final Order, National Ability fails to make a valid prima facie claim against ADM Cocoa. At a Rule E(4)(f) inquiry, the burden is on the plaintiff to make four basic showings:

> [A]n attachment should issue if the plaintiff shows that 1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment.

Aqua Stoli, 460 F.3d at 445.

ADM Cocoa does not challenge the claim that it cannot be found within the district for the purposes of Rule B. ADM Cocoa further concedes that property belonging to it, in the form of an electronic transfer of funds in an amount exceeding $2,395,399.83, has been found and attached within this district. See De Palma Decl. at ¶¶ 14-16; Chye Decl. at ¶ 10.

However, plaintiff does not have a "valid prima facie admiralty claim" against ADM Cocoa. The Court is required to analyze the prima facie validity of the underlying claims in a Rule E (4)(f) hearing. In analyzing the prima facie sufficiency of alter ego claims alleged by plaintiffs in the context of a Rule E (4)(f) hearing, the courts have held that "wholly conclusory allegations in the Amended Complaint [were], upon reflection, simply insufficient." Brave Bulk Transp. v. Spot on Shipping Ltd., 07 Civ. 4546, 2007 U.S. Dist. LEXIS 81137 (S.D.N.Y. Oct. 30, 2007). Due to the fact that the entity whose assets had been attached was not a party to the contract sued upon, the courts apply strict views on the sufficiency of the alter ego claims. The court in Brave Bulk Transp. stated:

Were a plaintiff to be permitted to rely on such allegations to obtain an attachment against an entity that is not a party to a contract sued on, the already thinly stretched remedy of maritime attachment could disrupt the commercial activities of entities whose links to the real defendant in interest are tenuous of non-existent.

Brave Bulk Transp., 2007 U.S. Dist. LEXIS 81137, at * 16; see also, Ogi Oceangate Transp., 2007 U.S. Dist. LEXIS 74180 (finding it was court's role to make conclusions regarding validity of plaintiff's claims and plaintiff had failed to meet its burden).

As fully explored below, Plaintiff's conclusory allegations of "alter ego" against ADM Cocoa fail to sustain the causes of action for maritime claims against ADM Cocoa.

### A.    Plaintiff Alleges No Valid Prima Facie Alter Ego Claim Against ADM Cocoa

Plaintiff National Ability obtained *ex parte* multiple Rule B Maritime Attachments against the property of the defendant, ADM Cocoa, alleging that it has a "maritime claim" against ADM Cocoa.

However, as is clear from the Second Amended Complaint, the source of National Ability's claim against ADM Cocoa is a claim that ADM Cocoa is the "alter ego" of defendant ADM Interoceanic Limited ("ADM Interoceanic"), which is in turn alleged to be the "alter ego" of TOCL. It is undisputed that ADM Cocoa was not a party to the underlying charter agreement nor does it have any privity to that contract. Therefore, National Ability has no direct claim for breach of contract against ADM Cocoa. De Palma Decl., Ex. M at ¶ 13. Importantly, there is no dispute that there was no relationship whatsoever between ADM Cocoa and TOCL at the time of the charter. Furthermore, National Ability asserts no direct claim against ADM Cocoa under the Arbitral Award resulting from the charter dispute. De Palma Decl., Ex. M at ¶ 69.

Such an alter ego claim is not a maritime claim under Rule B as a matter of law.

### (1)    Choice of Law and Pleading Standard Under Rule E(2)(a)

Federal courts sitting in admiralty apply federal common law to the question of whether to peirce the corporate veil. Holborn Oil Trading Ltd. and Interpol Bermuda Ltd., 774 F.Supp. 840, 844 (S.D.N.Y. 1991) ("Federal courts sitting in admiralty must apply federal common law when examining corporate identity."); Tide Line, Inc. v. Eastrade Commodities, Inc., 06 CV 1979, 2006 U.S. Dist. LEXIS 95870 (S.D.N.Y. Aug. 15, 2006); SPL Shipping Ltd. v. Gujarat Cheminex Ltd., Case No. 06-CV-15375, 2007 U.S. Dist. LEXIS 18562 (S.D.N.Y. Mar. 15, 2007).

The presumption of corporate separateness that all corporations enjoy will only be discarded and the corporate veil consequently pierced if: (i) a corporation was used by another entity or individual to "perpetrate a fraud" or (ii) was "so dominated" and its corporate form "disregarded" such that it primarily transacted the other entity's or individual's business. Kirno Hill Corp. v. Holt, 618 F.2d 982, 985 (2d Cir. 1980); Tide Line, 2006 U.S. Dist. LEXIS 95870 (presumption of separateness between corporation and its owners is entitled to substantial weight.)

Furthermore, mere conclusory allegations will not sustain a claim of alter ego under the heightened pleading standard required by Fed. R. Civ. P. Supp. R. E(2) (a).  Instead, National Ability must comply with a more stringent standard of particularity in making its alter ego claims. Tide Line, 2006 U.S. Dist. LEXIS 95870 (holding that plaintiff must show in the pleadings that it has a valid prima facie claim against another party on the basis of alleged alter ego status).  "This heightened pleading standard is not some pettifogging technicality meant to trap the unwary, but, rather, a legal rule designed to counterbalance the unique and drastic remedies that are available in rem admiralty proceedings." P.R. Ports Auth. v. Barge KATY-B, 427 F.3d 93, 105 (1st Cir. P.R. 2005). As illustrated below, National Ability woefully fails to meet this burden.

### (2)    Alter Ego Factors

The Court of Appeals for the Second Circuit has identified several factors to be considered in analyzing alleged alter ego status: (1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, i.e., issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arm's length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by others of those corporations as if it were its own. Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc., 933 F.2d 131, 139 (2d Cir. 1991); see also, Tide Line, 2006 U.S. Dist. LEXIS 95870.

### (3)    Analysis

Courts considering alter ego claims in the context of Rule B attachment proceedings have often found that claims fail under Rule E(2)(a) when they are comprised of conclusory allegations, rather than particularized factual allegations. For example, the court in Tide Line, Inc. v. Eastrade Commodities, Inc. found the sole factual allegation that one entity was a paying agent, or arranged for other non-parties to satisfy the debts and obligations of another, was insufficient to establish alter ego liability. Tide Line, Inc., 2006 U.S. Dist. LEXIS 95870 at 11. The plaintiff in Dolco Invs., Ltd. v. Moonriver Dev., Ltd. made the following allegations: that defendant GML had been used by defendant Moonriver as a vehicle to pay funds; that both entities shared a director; that

18

defendant GML used Moonriver to perpetuate a fraud and/or so dominated and disregarded its corporate form that it primarily transacted GML's corporate business rather than Moonriver's own corporate business; that defendant GML made payments to plaintiff from time to time to satisfy defendant Moonriver's debts and obligations; and that defendant GML was defendant Moonriver's alter ego. Dolco Invs., Ltd., 486 F. Supp. 2d at 270. However, the court, acknowledging that a "corporate entity is only liable for the acts or a separate, related entity only under extraordinary circumstances," found plaintiff's allegations to be insufficient. Dolco Invs., Ltd., 486 F. Supp. 2d at 272. The court found Plaintiff's claims to be merely conclusory allegations of domination and the only factual allegation alleging that one defendant had made payments on behalf of another was not enough under the heightened standard of Rule E(2)(a). Id.

National Ability's allegations against ADM Cocoa are merely conclusory. For example, National Ability states that ADM Cocoa is a shell corporation of ADM Interoceanic, had no "separate identity," is an "alter ego," dominates and disregards ADM Interoceanic to the extent that it is carrying on its business through ADM Interoceanic, that there is "inadequate attention to corporate formality" and that it used ADM Interoceanic as a "pass through" company. NOT ONE of these conclusory allegations, which merely parrot the language of the legal standard, is supported by an allegation containing any degree of particularity. Furthermore, these allegations do not connect ADM Cocoa to TOCL, the entity that National Ability alleges is responsible for the international arbitration award and the entity with whom National Ability contracted in 1998.

The only particular allegation in the entire Complaint that ties ADM Cocoa to TOCL is that they share one director in common. The only particular allegation in the entire Complaint regarding ADM Cocoa and ADM Interoceanic is that ADM Interoceanic has been associated with the same address as ADM Cocoa. Compl. ¶ 63. These two factual allegations alone are woefully

insufficient to overcome the presumption of corporate independence and justify such an onerous remedy as a Rule B attachment restraining over $2.5 million.

Courts considering alter ego allegations in attachment proceedings against entities that were not parties to the contracts sued upon should be wary of over-extending the remedy. As stated by the Court in Brave Bulk Transp. v. Spot on Shipping Ltd.,

> The wholly conclusory allegations in the Amended Complaint are, upon reflection, simply insufficient. Were a plaintiff to be permitted to rely on such allegations to obtain an attachment against an entity that is not a party to a contract sued on, the already thinly stretched remedy of maritime attachment could disrupt the commercial activities of entities whose links to the real defendant in interest are tenuous of non-existent.

Brave Bulk Transp. v. Spot on Shipping Ltd., 07 Civ. 4546, 2007 U.S. Dist. LEXIS 81137, at *16 (S.D.N.Y. 2007).

That is precisely what has happened in this case. ADM Cocoa, an entity that has nothing to do with the original contract, the subsequent arbitration and Arbitral Award, and the current enforcement proceeding on the Arbitral Award in India in which National Ability has obtained sufficient security. ADM Cocoa has had its business transactions impeded, its funds restrained and its reputation besmirched to clients and competitors as a result of this attachment based solely on unsubstantiated and conclusory allegations of alter ego.

There was no relationship between ADM Cocoa and TOCL at the time of the charter agreement. See Chye Decl. It is in the interest of justice, therefore, that these attachments be vacated.

Furthermore, as outlined in detail by the Chye Declaration, ADM Cocoa's corporate independence is complete and its governance impeccable. Chye Decl. at ¶¶ 26-80. ADM Cocoa complies with all of the requirements of Singaporean corporate governance and regulatory statutes. Chye Decl. at ¶¶ 26-40. Its finances are maintained in strict independence of all of its parents or

otherwise affiliated corporations. Chye Decl. at ¶ 32. It does not hold an ownership interest in TOCL and TOCL holds no ownership interest in it. Chye Decl. ¶¶ 41-56. Its business transactions with TOCL are conducted at arm's length in accordance with the terms and pricing that ADM Cocoa uses with all of its marketplace clients. Chye Decl. at ¶¶ 57-59. ADM Cocoa has neither loaned money nor received loaned money from TOCL, and has not made payments on behalf of or received payments from TOCL. Chye Decl. at ¶¶ 43, 44 53-55. The two entities have no assets in common. Chye Decl. at ¶¶ 44, 55. ADM Cocoa plays absolutely no role in running the business of TOCL and vice versa. Chye Decl. at ¶¶ 51, 52. Thus, the fact that the two entities share one director is woefully insufficient to support this drastic remedy and overwhelm the presumption of corporate separateness.[3] Chye Decl. at ¶¶ 46-49.

### (a)   Plaintiff Provides No Facts in Support of its Alter Ego Theory Against ADM Cocoa

An indispensable essential of a contract of partnership or joint venture is a mutual promise or undertaking of the parties to share in the profits of the business and submit to the burden of making good the losses. See F. Lee Bailey v. Aaron Broder, 94 Civ. 2394, 1998 U.S. Dist. LEXIS 301, at *3 (S.D.N.Y. Jan. 12, 1998). There is neither an allegation nor any evidentiary support for

---

[3]   An alter ego claim begins with the proposition that corporations such as TOCL, ADM Interoceanic and ADM Cocoa are entitled to a presumption of corporate separateness. American Renaissance Lines, Inc. v. Saxis Steamship Co., 502 F.2d 674, 677 (2d Cir. 1974); Int'l Marine Consultants, Inc. v. Karavias, 1985 U.S. Dist. LEXIS 19272, at *14 (S.D.N.Y. 1985) ("Moreover, the law is well settled that a corporation is a separate entity from its shareholders even though the business may have been incorporated for the very purpose of escaping personal liability."); Freeman v. Complex Computing Company, Inc., 119 F.3d 1044, 1052 (2d Cir. 1997) ("The presumption of corporate independence and limited shareholder liability serves to encourage business development."); and, Feitshans v. Kahn, 06 Civ. 2125 (S.D.N.Y. Sept. 21, 2006) ("Piercing the corporate veil is the equitable limitation of the principle that corporations have a separate and independent legal personality such that shareholders are not personally liable for corporate acts and obligations."). Indeed, as observed by Judge Scheindlin in Feitshans: "Because it is legitimate to incorporate to avoid personal liability, plaintiffs seeking to pierce the corporate veil bear a "heavy burden" in showing that the defendants have perverted the privilege of doing business in a corporate form." National Ability has not sustained this heavy burden.

an allegation that ADM Cocoa and ADM Interoceanic or TOCL entered into any undertaking to share their respective profits.  Furthermore, as illustrated by Chye's Declaration, the business transactions between ADM Cocoa and TOCL have always been at arm's length and subject to the similar pricing and terms as ADM Cocoa offers to its other clients.  Thus, National Ability's conclusory allegations do not support any reasonable claim that ADM Cocoa and ADM Interoceanic or TOCL were "partners" or "joint venturers."  Those allegations must be summarily rejected.

### (b)    National Ability Presents No Claim of Fraud

As noted above, federal common law allows piercing of the corporate veil where a corporation uses its alter ego to perpetuate a fraud. In this case, National Ability has made no allegations of fraud or illegality with respect to the activities of ADM Cocoa or any of ADM Cocoa's alleged alter egos.  A party asserting a claim for fraud is required to plead the elements of fraud with particularity.  FED. R. CIV. P. 9(b).  The typical elements of fraud are: (1) misrepresentation of material fact; (2) the falsity of that misrepresentation; (3) scienter, or intent to defraud; (4) reasonable reliance on that representation; and, (5) damage caused by such reliance. See, e.g., Pits, Ltd. v. American Express Bank Int'l, 911 F. Supp. 710, 715 (S.D.N.Y. 1996).

In the Second Amended Complaint, there are no allegations that even address these elements and, most certainly, there is no evidence that ADM Cocoa ever made any misrepresentations to National Ability or that National Ability ever relied upon any such misrepresentations by ADM Cocoa when it entered the charter party with TOCL.  Indeed, TOCL and ADM Cocoa had no relationship whatsoever during the time period of the charter.  It was only after the dispute arose

that ADM Cocoa's distant affiliate became an investor in TOCL. Plaintiff's conclusory allegations do not support any reasonable claim that ADM Cocoa used TOCL to perpetrate a fraud.

      **(c)**      **National Ability Has Not Alleged that ADM Cocoa Dominated and Controlled TOCL**

As set forth above, a properly pled alter-ego claim will show with particularity that one entity completely dominated and controlled the other to the extent that it is reasonable to restrain the former's property in order to secure a claim against the latter. In this case, it cannot be overemphasized that the sum and substance of the allegations contained in the Second Amended Complaint addressing the factors relevant to the alter ego claim are that:

     (a)     ADM Interoceanic has no "separate identity," is an "alter ego," is a "pass through" company;

     (b)     ADM Interoceanic and ADM Cocoa pay inadequate attention to corporate formality; and

     (c)     ADM Cocoa dominates and disregards ADM Interoceanic to the extent that it is carrying on its business through ADM Interoceanic.

In support of these claims, the only factual allegations asserted are that ADM Cocoa and ADM Interoceanic have been associated with the same address and ADM Cocoa and TOCL share a director.

It is true that the Archer Daniels Midland Company, as one of the world's largest agricultural processors, is a very large business conglomerate with diverse activities. However, the defendant entities, including ADM Cocoa, are not controlled and managed as a single economic enterprise. ADM Cocoa's business management, property and profits are maintained independently. Chye Decl. at ¶¶ 65, 68. ADM Cocoa has no role in the management of ADM Interoceanic. Chye Decl. at ¶ 68. Furthermore, National Ability has pled no factual allegations that support the allegation that ADM Cocoa dominates and disregards ADM Interoceanic.

ADM Cocoa was incorporated as a private company on May 16, 1984 in Singapore. Chye Decl. at ¶ 27. ADM Interoceanic was not part of ADM Cocoa's incorporation. Both companies file separate tax returns and have separate addresses as their principal places of business. Chye Decl. at ¶ 28. Both companies maintain separate bank accounts and operate as the separate legal entities that they are. Thus, there is no basis to consider ADM Interoceanic the alter ego of ADM Cocoa. National Ability has not, and cannot, present sufficient specific evidence to justify piercing the corporate veil in order to restrain ADM Cocoa's property.

The evidence presented by ADM Cocoa in this motion to vacate demonstrates: (1) there is no absence of the formalities and paraphernalia that are part and parcel of corporate existence; (2) there is no evidence that ADM Cocoa was insufficiently capitalized; on the contrary, plaintiff has not even alleged that ADM Cocoa was ever insufficiently capitalized; (3) there is no evidence that ADM Cocoa put in or took funds out of ADM Interoceanic or TOCL, instead funds paid to ADM Cocoa by TOCL were standard purchase prices for cocoa powder; (4) there is no evidence that ADM Cocoa exercised control over ADM Interoceanic or TOCL or interfered with either company's discretion with regards to the manner in which it conducted and conducts its business; (5) ADM Cocoa interacted and interacts with TOCL and ADM Interoceanic at arm's length; and, (6) ADM Cocoa never used TOCL's property or ADM Interoceanic's property as if it were its own. See, e.g., Wm. Passalacqua Builders, Inc. v. Resnick Developers, Inc., 933 F.2d 131, 139 (2d Cir. 1991).

National Ability's conclusory allegations of alter ego are insufficient as a matter of law. As the above list of commonly used factors demonstrates, the evidence submitted in support of this motion confirms that ADM Cocoa and TOCL are separate corporate identities. Under these circumstances, the Process of Maritime Attachment and Garnishment must be vacated as to ADM Cocoa as Plaintiff has not, and cannot, make a prima facie showing that it has a valid alter ego claim

24

against ADM Cocoa.  In sum, Plaintiff, through counsel, has improperly obtained an *ex parte* attachment order based upon conclusory and baseless allegations of "alter ego" and then proceeded to attach significantly more of ADM Cocoa's funds than are even permitted under the Attachment.

## IV.   THE *EX PARTE* ATTACHMENTS SHOULD BE DISMISSED BECAUSE NATIONAL ABILITY HAS SUFFICIENT SECURITY FOR ITS CLAIMS UNDER THE ARBITRAL AWARD

The *Ex Parte* Attachments should be vacated by the Court because National Ability has already obtained sufficient security for its claims.  The Court of Appeals for the Second Circuit has recently reaffirmed that district courts may vacate maritime attachments if:

> i) the defendant is subject to suit in a convenient adjacent jurisdiction, or ii) the plaintiff could obtain in personam jurisdiction over the defendant in the district where the plaintiff is located, or iii) the *plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise.*"

Aqua Stoli, 460 F.3d at 445 (emphasis added.).  National Ability has obtained such security in the Delhi Enforcement Proceedings.

For example, in the Dolco Invs., Ltd. case, the court ruled that vacatur of the attachment was required in part because the defendant has posted an guarantee for the amount of the maritime claim alleged in France where plaintiff had initially sought an attachment.  Dolco Invs, Ltd. 486 F. Supp. 2d 261, 266.  The court stated that it held the "equitable discretion to vacate maritime attachments when the plaintiff had already obtained sufficient security for the potential judgment."  Id. at 268.  As a result, the court vacated the attachment because the guarantee posted in France was sufficient to protect the maritime claim.  Id.

Additionally, the court in Ogi Oceangate Transp. vacated an attachment because both plaintiff and defendant were present in India and would be subject to jurisdiction there.  Ogi Oceangate Transp., 2007 U.S. Dist. LEXIS 74180.  The plaintiff appeared in the action in India but did not make a claim there for wrongful arrest.  Id.  Instead, the plaintiff came to the Southern

District of New York within a matter of weeks and filed the action for attachment. Id. The court found that upholding the attachment would be allowing an end-run around the system to attach funds in New York. Id. Therefore, vacatur under Aqua Stoli was appropriate in order to avoid this "end-run around the system to attach funds in the Southern District of New York," thereby contributing to the "rise of the cottage industry of Rule B attachments" in this district. Id.

The present dispute is analogous to both the Dolco Invs, Ltd. and the Ogi Oceangate Transp. precedents. It is undisputed that National Ability commenced the Delhi Enforcement Proceedings to enforce the Arbitral Award in 1998 against TOCL and Tinna Finex. It is also undisputed that National Ability obtained the Delhi Collateral Freezing Order on August 13, 1998. The Delhi Collateral Freezing Order provided that TOCL and Tinna Finex, their "directors, agents, representatives be restrained by ad-interim injunction restraining them from alienating, tran[s]ferring parting with possession, encumbering and/or dealing with any moveable and/or immoveable assets of the company any manner anywise and from operating the Bank Account with Syndicate Bank, Mayapuri, New Delhi." De Palma Decl. at ¶ 25; Ex. D.

Although the Delhi Collateral Freezing Order was vacated against TOCL pursuant to the Final Order, the Delhi High Court ordered that Tinna Finex is liable on the Arbitral Award and "is directed to make the payment within eight weeks from [June 4, 2008]. If no payment is made, [National Ability] would be entitled to get the orders of attachment of the properties of [Tinna Finex] and take further course of action to realize its amounts under the award from [Tinna Finex]." De Palma Decl., Ex. E at ¶ 32. The assets of Tinna Finex continue to be subject to the Delhi Collateral Freezing Order and will continue to be until the Arbitral Award is satisfied and paid. Id. at ¶ 31.

Thus, National Ability already has sufficient security against its claims in the jurisdiction that it choose to enforce the Arbitral Award. Allowing them to attach the assets of an entity entirely unrelated to the contract in dispute in the Southern District when its claims are fully secured in India

would provide the precise "end run around the system" that this Court has previously rejected. For this reason alone, the attachment must be vacated.

## V.    ADM COCOA AND TOCL SHOULD BE AWARDED COSTS AND ATTORNEYS' FEES

Title 28 of the United States Code, Section 1927, provides that an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.

The Court also may impose sanctions pursuant to its inherent power when attorneys or parties act "in bad faith, vexatiously, wantonly, or for oppressive reasons." United States v. Int'l Bhd. of Teamsters, 948 F.2d 1338, 1345 (2d Cir. 1991) (internal quotation marks omitted). "[T]he only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is . . . that awards under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both." Oliveri v. Thompson, 803 F.2d 1265, 1273 (2d Cir. 1986). The court may impose § 1927 or inherent-power sanctions only if there is "clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith – that is, motivated by improper purposes such as harassment or delay." Eisemann v. Greene, 204 F.3d 393, 396 (2d Cir. 2000).

The Supreme Court has permitted the award of attorney's fees in maritime actions at least since 1824, and has re-affirmed that decision since. Vaughan v. Atkinson, 369 U.S. 527 (1962). ("Counsel fees were allowed in The Apollon, 9 Wheat. 362, 379, an admiralty suit where one party was put to expense in recovering demurrage of a vessel wrongfully seized.").

27

In the context of maritime attachment proceedings courts have awarded attorney's fees where they have found that the actions of plaintiff's attorneys are akin to cases of malicious prosecution. Furthermore, they have ruled that withholding a known, pertinent fact from the court constitutes reckless disregard for the truth and may satisfy the malicious prosecution standard, meriting sanctions, including the award of attorney's fees to the defendant. Coastal Barge Corp. v. The M/V Maritime Prosperity, 901 F. Supp. 325, 329 (M.D. FL 1994). ("The reasons for awarding damages for wrongful arrest of a vessel are analogous to those in cases of malicious prosecution. In cases of malicious prosecution, a defendant may disregard the claimant's rights by recklessly disregarding the truth." (citations omitted)). The omission of a known, pertinent fact may constitute reckless disregard of the truth. Id. at 329.

In the Costal Barge case, a material omission was found to exhibit a reckless disregard for the truth. Id. at 329. Therefore, the court found that Plaintiff's actions in effecting the arrest of the ship while omitting material and relevant facts constituted bad faith and merited the award of attorneys' fees and expenses. Id. at 330. The court stated, "[b]y its conduct, Plaintiff has injured the Defendants and their innocent customers. By keeping silent as to the existence of its prior promise, Plaintiff made this Court an instrument of that injury. Damages for wrongful arrest of the Maritime Prosperity will obtain accordingly." Id. at 329.

In the present case, Plaintiff and its counsel never informed the Court that they had previously obtained the Delhi Collateral Freezing Order providing adequate security for their claims on the Arbitral Award, yet nonetheless obtained two of the Ex Parte Attachment Orders. Then, nearly five weeks after issuance of the Final Order, and without advising this Court of the dismissal of all claims against TOCL by the High Court of Delhi, Plaintiff, through its attorneys, faxed a copy of a letter addressed to Judge Hellerstein, seeking leave to file a Second Amended Complaint. In doing so, National Ability, in grave dereliction of its duty of full disclosure, failed to notify the

28

Court that it had already obtained the Final Order from the High Court of Delhi that dismissed the claim against TOCL. In spite of that knowledge, National Ability asked the court for further attachment of ADM Cocoa's assets, making this Court, as the court in Coastal Barge, an "instrument of injury" to ADM Cocoa. Furthermore, Plaintiff's counsel then used the attachment to attach additional assets of ADM Cocoa and TOCL in direct contravention of their ethical obligations.

Therefore, in light of Plaintiff's and its counsel's material breach of its obligation to fully inform the court, attorneys' fees and expenses should be awarded to ADM Cocoa and TOCL. Should the Court grant that portion of ADM Cocoa's and TOCL's motion which seeks, pursuant to 28 U.S.C. § 1927 and the Court's inherent powers, the award of their costs and expenses, including reasonable attorneys' fees, at the Court's direction, Defendants shall submit an affidavit of costs, fees and disbursement to the Court as appropriate

## CONCLUSION

For the foregoing reasons, Defendants ADM Cocoa and TOCL respectfully request that this Court issue an Order: (i) vacating, as against ADM Cocoa and TOCL, the *Ex Parte* Attachments; (ii) dismissing, as against ADM Cocoa and TOCL, the Second Amended Verified Complaint herein in its entirety; (iii) awarding to ADM Cocoa and TOCL the damages they sustained as a result of the prosecution of these proceedings and wrongful attachment of their assets, including, but not limited to, their costs and reasonable attorneys fees; and (iv) granting to ADM Cocoa and TOCL such other and further relief as the Court deems just and proper.

Dated: New York, New York.
      August 6, 2008

BAKER & McKENZIE LLP

By: _____

    Richard A. De Palma
    Kathryn M. Ryan
    Christina M. Wilson
    1114 Avenue of the Americas
    New York, New York 10036
    (212) 626-4100

*Attorneys for Defendants*
ADM Cocoa Pte. Ltd.
and Tinna Oils & Chemicals Ltd.

TO:    Patrick F. Lennon
       Nancy R. Siegel
       Lennon, Murphy & Lennon, LLP
       420 Lexington Avenue, Suite 300
       New York, New York 10170
       (212) 490-6050

       *Attorneys for Plaintiff*
       National Ability S.A.