UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NATIONAL ABILITY S.A.,

                Plaintiff,

- against -

TINNA OILS & CHEMICALS LTD.,
TINNA FINEX LTD., TINNA GROUP,
TINNA AGRO INDUSTRIES LTD., ADM
INTEROCEANIC LIMITED, ADM COCOA
PTE. LTD. and ARCHER DANIELS
MIDLAND SINGAPORE PTE LTD.;

                Defendants.

Case No. 07 Civ. 9913

### DECLARATION OF RICHARD DE PALMA
### IN SUPPORT OF MOTION TO VACATE ATTACHMENTS AND DISMISS SECOND AMENDED COMPLAINT AS AGAINST ADM COCOA PTE. LTD. AND TINNA OILS & CHEMICALS LTD.

RICHARD A. DE PALMA, hereby states under penalty of perjury:

1. I am a member of the law firm of Baker & McKenzie LLP, attorneys for defendants ADM Cocoa Pte. Ltd. ("ADM Cocoa") and Tinna Oils & Chemicals Ltd. ("TOCL") (collectively, "Defendants") in the above-captioned action.

2. I respectfully submit this declaration, together with the accompanying Declaration of Yeong Chye dated July 28, 2008 ("Chye Decl."), and the exhibits attached thereto, and the accompanying Memorandum of Law dated August 5, 2008, all in support of the motion of defendant ADM Cocoa for an Order: (i) vacating, as against ADM Cocoa and TOCL, the attachments herein obtained *ex parte* pursuant to Rule B of the Supplemental Admiralty Rules for

Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, the Ex Parte Order For Process of Maritime Attachment And Garnishment dated November 9, 2007, the Ex Parte Order For Process of Maritime Attachment And Garnishment dated February 28, 2008 (the "Ex Parte Attachment") and the Second Amended Ex Parte Order For Process of Maritime Attachment And Garnishment dated July 16, 2008 (the "Second Amended Ex Parte Attachment") (collectively, the "Ex Parte Attachments"); (ii) dismissing, as against ADM Cocoa and TOCL, plaintiff's Second Amended Verified Complaint (the "Second Amended Complaint") in its entirety; (iii) awarding to ADM Cocoa and TOCL the damages they sustained as a result of the wrongful prosecution of these proceeding and the wrongful attachment of their assets, including but not limited to their costs and reasonable attorneys fees; and (iv) granting to ADM Cocoa and TOCL such other and further relief as the Court deems just and proper.

3. I am fully familiar with all the facts contained herein based upon my own personal knowledge, except as to matters stated to be made upon information and belief, and as to such matters, I believe them to be true.

4. The basis of my information and belief are (i) conferences and correspondence with ADM Cocoa and TOCL; (ii) conferences and correspondence with Mr. Sudhir Nandrajog, Advocate on Record of the Supreme Court of India, duly authorized to practice law before the Courts of India, who has acted as Advocate for TOCL in connection with proceedings commenced in the High Court of Delhi, India, by National Ability S.A. ("National Ability") against TOCL and Tinna Finex Ltd. ("Tinna Finex") entitled <u>National Ability N.A., Petitioner, versus Tinna Oils & Chemicals Ltd. and Tinna Finex Ltd, Respondents</u>, O.M.P. No. 173 of 1998 (the "Delhi Enforcement Proceedings"); (iii) a review of the docket and documents filed in the instant matter in

2

this Court; and (iv) a review of the proceedings and documents filed in the Delhi Enforcement Proceedings.

## Background

### *The Underlying Charter Transaction*

5. Based upon the documentary evidence and upon the allegations in the Second Amended Complaint, it is undisputed that TOCL entered into a charter party dated April 4, 1995 with National Ability chartering the vessel, "Amazon Reefer," to carry 8,000 tons of potatoes from Port of Kandla, Gujarat to Port of Novorossiysk in Russia.

6. TOCL was the charterer and shipper of the cargo.

7. Upon arrival, the discharging of the cargo was halted because the potato cargo had deteriorated.

8. Due to Russian quarantine restrictions, the Russian buyers could not accept the potatoes.

9. Eventually, after a month's delay during which time the parties argued about who should bear responsibility for discharging the ruined cargo, the rotten potatoes were dumped into the Atlantic Ocean, near Spain.

### *The London Arbitration Proceedings*

10. In or around October of 1995, National Ability filed a request for arbitration under the charter agreement in London, seeking an award against TOCL for demurrage, detention and dumping and cleaning costs, totaling approximately $1 million (the "London Arbitration Proceedings").

11. TOCL counterclaimed for the value of the lost cargo (however, such counterclaims were set aside by the Tribunal because TOCL did not have the funds to pay the amount directed to be deposited as security).

## *The Scheme Of Arrangement*

12. While the arbitration proceedings were pending, TOCL filed a petition with the High Court of Delhi at New Delhi (Company Petition No. 303 of 1997) for approval and sanction by the Court of a Scheme of Arrangement (the "Scheme of Arrangement") between TOCL and Tinna Finex pursuant to which TOCL would transfer to Tinna Finex a certain set of assets and liabilities defined in the Scheme of Arrangement as the "Spin Off Division." The Spin Off division included, among other things, all of that portion of the TOCL business which was involved in the underlying charter with National Ability and included all assets and liabilities related to that charter and any that may arise as a result of the London Arbitration Proceedings. A copy of the petition seeking court approval of the Scheme of Arrangement is annexed hereto as Exhibit A.

13. At the time of the filing of the petition as well as at the time of the charter transaction with National Ability, TOCL was a public company.

14. Public notice of the petition and proceedings were provided as required by law to all shareholders and creditors of TOCL.

15. Approval of a Scheme of Arrangement under Indian law is similar in nature to Court confirmation of a Plan of Reorganization under U.S. Bankruptcy law which is then binding upon all of the creditors of the subject company. See Exhibit E at ¶¶ 7-9, 22-26.

16. On or about November 7, 1997, the High Court of Delhi entered an Order approving and sanctioning the Scheme of Arrangement. Pursuant to the Scheme of Arrangement, the Spin Off Division was transferred to Tinna Finex. As a result thereof, any claims or liabilities of TOCL

4

deriving from the transaction with National Ability were transferred to, and became the sole liability of, Tinna Finex. See Exhibit E at ¶¶ 7-9, 22-26.

### *The Arbitral Award*

17. Accordingly, TOCL disclosed the High Court's approval of the Scheme of Arrangement to the Arbitral Tribunal. Thus, Tinna Finex was made a party to the London Arbitration Proceedings between National Ability and TOCL. See Exhibit E at ¶ 25.

18. The arbitration hearings took place in London in 1998 and resulted in an arbitral award against TOCL and Tinna Finex in the amount of $819,983.16 plus costs (the "Arbitral Award"). A copy of the Arbitral Award is annexed hereto as Exhibit B.

19. Indeed, as the Court can see, the caption on the Arbitral Award reads as follows:

| IN THE MATTER OF THE ARBITRATION ACTS 1950 – 1979 And IN THE MATTER OF AN ARBITRATION Between NATIONAL ABILITY S.A. of Panama | Claimants (Owners) |
|---|---|
| and **TINNA OILS & CHEMICALS LTD. IN A SCHEME OF ARRANGEMENT BY ORDER OF THE HIGH COURT OF DELHI WITH TINNA FINEX LTD.** | **Respondents (Charterers)** |

Exhibit B (bold added).

### *The Delhi Enforcement Proceedings*

20. Subsequent to issuance of the Arbitral Award, on or about August 7, 1998, National Ability filed a petition with the High Court of Delhi at New Delhi, thereby commencing the Delhi Enforcement Proceedings, seeking to enforce the Arbitral Award against both TOCL and Tinna Finex. A copy of National Abilities petition is annexed hereto as Exhibit C.

21. In the Delhi Enforcement Proceedings, among other things, National Ability sought an order that TOCL and Tinna Finex, their "directors, agents, representatives be restrained by ad-

interim injunction restraining them from alienating, tran[s]ferring parting with possession, encumbering and/or dealing with any moveable and/or immoveable assets of the company any manner anywise and from operating the Bank Account with Syndicate Bank, Mayapuri, New Delhi" (the "Delhi Collateral Freezing Order").

22. The purpose of the Delhi Collateral Freezing Order was to secure sufficient assets and collateral to satisfy the Arbitral Award in the event that the Delhi Enforcement Proceedings against TOCL and Tinna Finex were successful.

23. TOCL and Tinna Finex both appeared in the Delhi Enforcement Proceedings by separate counsel.

24. At no time did National Ability join or attempt to join ADM Cocoa or any of the other named defendants in the instant action as parties to the Delhi Enforcement Proceedings.

25. Pursuant to the request by National Ability, the High Court of Delhi granted National Ability's application and issued the Delhi Collateral Freezing Order on August 13, 1998. Annexed hereto as Exhibit D is a copy of Delhi Collateral Freezing Order (National Ability S.A.'s Petition under section 9 of the Arbitration and Conciliation Act of 1996 read with Order 39 Rules 1, 2, 3, & 7 and Section 151 CPC. See also Ex. C at (B)(2)((C), p. 13, defining prayer for relief C.

26. On June 4, 2008, upon full submissions by all parties, including National Ability, the High Court of Delhi issued an determination and order (the "Final Order") ruling that TOCL has no liability in connection with the Arbitral Award because any such liability passed to Tinna Finex under the Scheme of Arrangement approved by the High Court of Delhi. A copy of the June 4, 2008 Final Order is annexed hereto as Exhibit E.

27. Consequently, the High Court of Delhi sustained the objections of TOCL and declared and adjudged that "it is held that the respondent No. 1 [TOCL] is not liable for any payment under the said [Arbitral A]ward." Exhibit E at ¶ 25.

28. The High Court of Delhi also ruled that Tinna Finex is liable on the Arbitral Award and "is directed to make the payment within eight weeks from [June 4, 2008]. If no payment is made, [National Ability] would be entitled to get the orders of attachment of the properties of [Tinna Finex] and take further course of action to realize its amounts under the award from [Tinna Finex]." Exhibit E at ¶ 32.

29. The assets of Tinna Finex continue to be subject to the Delhi Collateral Freezing Order and will continue to be until the Arbitral Award is satisfied and paid. Id. at ¶ 31.

*Commencement of the Instant Proceedings Before This Court*

30. Annexed hereto as Exhibit F is a copy of the Docket Sheet (the "Docket Sheet") in this case printed from PACER as of the date of this declaration.

31. According to the Docket Sheet, Plaintiff originally commenced this action only against defendants TOCL and Tinna Finex on November 9, 2007 by filing of a verified complaint dated November 9, 2007 (the "Original Complaint"). The Original Complaint is verified by an attorney – not a person with actual knowledge from the Plaintiff itself. A copy of the Original Complaint is annexed hereto as Exhibit G.

32. Essentially, the Original Complaint alleges that a dispute arose between Plaintiff and TOCL in connection with the charter of a vessel "Amazon Reefer" in 1995 which resulted in an Arbitral Award in favor of Plaintiff and against TOCL and Tinna Finex in 1998 in the amount of just over $1 million.

33. There is no mention of ADM Cocoa in the Original Complaint.

34. Based upon the Original Complaint and the attorney affidavit of Nancy R. Peterson sworn to November 9, 2007, the Court signed and entered an Ex Parte Order For Process Of Maritime Attachment And Garnishment dated November 9, 2007 against TOCL and Tinna Finex.

35. According to the letter dated February 29, 2008 from Plaintiff's counsel to the Court, Plaintiff was not able to find assets to attach in this District of either TOCL or Tinna Finex. A copy of the February 29, 2008 Letter is annexed hereto as Exhibit H.

### *Plaintiff Adds ADM Cocoa As A Defendant*

36. Apparently, having found no assets of TOCL or Tinna Finex -- the actual parties to the Arbitral Award – Plaintiff filed the Amended Complaint, again verified by an attorney (not the client), adding five new "defendants," including ADM Cocoa. A copy of the Amended Complaint is annexed hereto as Exhibit I.

37. According to Plaintiff's counsel, the reason for adding the new defendants is the belief by Plaintiff's counsel that such newly-added defendants "will be sending funds through New York." See Exhibit H.

38. The basis of liability against ADM Cocoa (and the other newly added defendants) stated in the Amended Complaint is the set of conclusory allegations by Plaintiff that ADM Cocoa is the "alter ego" of TOCL. Indeed, a close review of the Amended Complaint shows that Plaintiff does not allege any <u>facts</u> supporting any alter ego claim as against ADM Cocoa. In any event, as set forth fully in the Chye Declaration, any such allegations, conclusory though they be, are false.

### *Plaintiff Attaches ADM Cocoa's Assets Ex Parte*

39.  Based upon the Amended Complaint and an amended attorney affidavit dated February 28, 2008, the Court issued a second Ex Parte Order For Process of Maritime Attachment And Garnishment (the "Ex Parte Attachment") against, among others, ADM Cocoa. A copy of the Ex Parte Attachment is annexed hereto as Exhibit J.

40.  In addition, the Court (Hon. Alvin K. Hellerstein, presiding) endorsed Plaintiff's counsel's February 29, 2008 letter to so-order that "the time within which to perfect attachments and/or to effect service is enlarged to June 30, 2008. Failure so to accomplish will be cause for dismissal." Exhibit H.

41.  On or about March 10, 2008, Plaintiff, through its attorneys, sent a letter dated March 10, 2008 (the "March 10 Letter") to TOCL, Tinna Finex and ADM Cocoa, enclosing the Summons and Amended Complaint in this action. Chye Decl. at Exhibit O.

42.  The March 10 Letter, without indicating which of the three addressees are implicated (TOCL, Tinna Finex or ADM Cocoa), states that "your [?] property was attached at Citibank on or about March 6, 2008 in the amounts of $148,402.75, $128,380.00 and $102,830.71 and March 10, 2008 in the amounts of $80,250.96, $80,388.50, $636,866.03, $12,920.73 and $187,057.50. Your [?] property was further attached at HSBC on or about March 7, 2008 in the amounts of $28,116.68 and $28,121.28." Chye Decl. at Exhibit O.

43.  Subsequent to receiving the March 10 Letter, ADM Cocoa received notice from its account managers at Citibank that $2,339,161.87 of ADM Cocoa's funds had been attached pursuant to the Ex Parte Attachment. Chye Decl. at ¶ 17.

44.  Additionally, ADM Cocoa's investigation has confirmed that Plaintiff had also attached an additional $56,237.96 of ADM Cocoa's funds at HSBC. Chye Decl. at ¶ 18.

45. Thus, as of March 10, a total of approximately $2,395,399.83 in funds seemed to have been attached -- $79,566.87 more than permitted by the Ex Parte Attachment. Subsequently, some funds (we are not clear how much) seemed to have been released by the banks at Plaintiff's request, but not before creating significant interference with ADM Cocoa's business transactions and relationships.

46. On or about April 4, 2008, ADM Cocoa filed its Answer to the Amended Complaint. A copy of ADM Cocoa's Answer is annexed hereto as Exhibit K.

47. The record herein does not indicate that Plaintiff or its counsel has disclosed to the Court the issuance of the Collateral Freezing Order in 1998 by the High Court of Delhi. It is respectfully submitted that failure to do so was a violation of Plaintiff's and its counsel's duties of full disclosure to this Court in seeking the extreme remedy of ex parte attachments under Rule B.

*Plaintiff Makes Additional Applications For Ex Parte Attachments Without Advising The Court Of The Final Order*

48. Subsequent to the filing of ADM Cocoa's Answer, and prior to Plaintiff's most recent applications before this Court, as set forth above, on June 4, 2008, upon full submissions by all parties, including National Ability, the High Court of Delhi issued the Final Order ruling that TOCL has no liability in connection with the Arbitral Award because any and all such liability passed to Tinna Finex under the Scheme of Arrangement.

49. Nearly five weeks after issuance of the Final Order, and without advising this Court of the dismissal of all claims against TOCL by the High Court of Delhi, on or about July 14, 2008, Plaintiff, through its attorneys, faxed a copy of a letter addressed to Judge Hellerstein, seeking leave to file a Second Amended Complaint (the "Second Amended Complaint") increasing the amount sought in these proceeding and as a basis for seeking additional attached funds. Based upon the

information before it, the Court granted the motion by endorsing the letter. A copy of the Endorsed July 14, 2008 letter is annexed hereto as Exhibit L.

50. A copy of the Second Amended Complaint is annexed hereto as Exhibit M.

51. On July 16, 2008, Plaintiff submitted a Second Amended Ex Parte Order for Process of Maritime Attachment (the "Second Amended Ex Parte Attachment") for signature to the District Judge sitting in Part I – not to Judge Hellerstein. District Judge Laura Taylor Swain, sitting in Part I, and who has no history with this case, signed the Second Amended Ex Parte Attachment. A copy of the Second Amended Ex Parte Attachment is annexed hereto as Exhibit N.

52. The Second Amended Ex Parte Attachment provides for attachment of defendants' assets up to $2,782,491.77. See Exhibit N.

53. Notwithstanding the Final Order by the High Court of Delhi, and the continuation of the Collateral Freezing Order against Tinna Finex, Plaintiff and its counsel made no efforts to correct the false and baseless allegations in the Second Amended Complaint asserting that ADM Cocoa is liable on the Arbitral Award because it is the "alter ego" of TOCL.

54. It is respectfully submitted that the proffer to the Court of the Second Amended Complaint for filing, taken together with the failure to advise the Court of the Collateral Freezing Order and the Final Order, constituted grave misrepresentations and omissions to this Court and an attempt to manipulate the Court's procedures and process to the detriment of ADM Cocoa's rights and business.

55. To compound this dereliction of the duty of full disclosure, Plaintiff and its counsel used the Second Amended Ex Parte Attachment to then attach additional funds, and, on or about July 21, 2008, Plaintiff, through its attorneys, sent a letter dated July 21, 2008 (the "July 21 Letter") to TOCL, Tinna Finex and ADM Cocoa, enclosing the Summonses, Second Amended Complaint,

Affidavits in Support, Second Amended Ex Parte Order of Maritime Attachment and Garnishment and Process of Attachment in this action. Chye Decl. at Exhibit P.

56. The July 21 Letter, again without indicating which of the three addressees are implicated (TOCL, Tinna Finex or ADM Cocoa), states that "your [?] property was attached at Citibank on or about July 21, 2008 in the approximate amount of $461,158.81. Your [?] property was also attached at J.P. Morgan Chase on or about July 21, 2008 in the amount of $5,500.00." Chye Decl. at Exhibit P.

57. ADM Cocoa is in the process of trying to determine whose assets have been attached, but currently believes that at least some of the funds are that of ADM Cocoa.

58. TOCL has recently confirmed that $121,780.00 of its assets were attached pursuant to the Ex Parte Attachment.

59. In any event, it appears that to date, as much as $2,862,058.64 of ADM Cocoa's assets, plus $121,780.00 of TOCL's assets have been attached by Plaintiff – again, more than permitted by the Second Amended Ex Parte Attachment Order. Once ADM Cocoa can confirm its attached figures, we will advise the Court.

60. As set forth in the accompanying memorandum of law, Plaintiff's conclusory allegations – which are verified only by hearsay statements of counsel, do not support a claim against ADM Cocoa as a matter of law.

61. Moreover, given that (a) Plaintiff has already obtained the Final Order from the High Court of Delhi, India directing Tinna Finex to pay the amount under the Arbitral Award and an attachment as against Tinna Finex, and (b) the High Court has ruled that TOCL has no liability in connection with the Arbitral Award, Plaintiff is precluded from attaching assets of ADM Cocoa, TOCL's supposed "alter-ego," in this action.

62. It is respectfully submitted that the Second Amended Complaint should be dismissed as against ADM Cocoa and TOCL and each of the Ex Parte Attachment Orders should be vacated forthwith.

63. In addition, in light of the fact that Plaintiff and its counsel have breached their duties of disclosure to this Court in seeking and obtaining attachment of Defendant's funds without basis, it is respectfully submitted that this Court should issue to ADM Cocoa and TOCL its damages, costs and disbursements in this matter, together with reasonable attorneys fees.

64. Should the Court grant that portion of ADM Cocoa's and TOCL's motion which seeks, purusant to 28 U.S.C. § 1927 and the Court's inherent powers, the award of their costs and expenses, including reasonable attorneys' fees, at the Court's direction, we shall submit an affidavit of costs, fees and disbursement to the Court as appropriate.

WHEREFORE, ADM Cocoa and TOCL respectfully request that the Court enter an Order: (i) vacating the Ex Parte Attachments as against ADM Cocoa and TOCL; (ii) dismissing the Second Amended Complaint against ADM Cocoa and TOCL in its entirety; (iii) awarding to ADM Cocoa and TOCL the damages they sustained as a result of the wrongful prosecution of this action and attachment of their assets, including but not limited to their costs and reasonable attorneys fees; and (iv) granting to ADM Cocoa and TOCL such other and further relief as the Court deems just and proper. *No prior application for this relief has been made. RAS*

I HEREBY DECLARE PURSUANT TO 28 U.S.C. § 1746, UNDER THE LAWS OF THE UNITED STATES OF AMERICA AND THE STATE OF NEW YORK AND UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Dated: New York, New York
August 5, 2008

_____
RICHARD DE PALMA

13