# Exhibit E

# IN THE HIGH COURT OF DELHI AT NEW DELHI

**Ex.P. No. 74 of 2000**
With
<u>OMP No. 173 of 1998</u>

%

<u>*Pronounced on : June* 4 *, 2008*</u>

National Ability S.A.                                   . . . Petitioner

<u>through</u> :               Mr. Arvind Nigam with       
                            Ms. Purnima Maheswari,
                            Advocates

*VERSUS*

Tinna Oil & Chemicals Ltd. & Ors.                      . . . Respondents

<u>through</u> :               Mr. Ajay Kr. Agrawal with
                            Ms. Alka Agrawal and
                            Ms. Anamika Agrawal, Advocates
                            for the respondent No.2.

CORAM :-
   THE HON'BLE MR. JUSTICE A.K. SIKRI

   1.  Whether Reporters of Local newspapers may be allowed
       to see the Judgment?
   2.  To be referred to the Reporter or not?
   3.  Whether the Judgment should be reported in the Digest?  *Yes*

<u>A.K. SIKRI, J.</u>

1.   The petitioner had, by a Charter Party dated 29.4.1995, on a Gencon

     form, chartered the vessel "AMAZON REEFER" to the respondent

     No.1 herein for a voyage from Kandla to Novorossiysk. The said

     charter party contained the terms and conditions on which the vessel

     was chartered. It also contained an arbitration agreement in Clause

     29 thereof which, *inter alia,* provided that in the event of disputes

     between the parties, the same could be settled through arbitration in

     London according to English Law. Disputes and differences arose

between the parties and, accordingly, the matter was referred to arbitration in London. The said Arbitral Tribunal, which comprised of three arbitrators, has given award dated 19.11.1998.

2.  The petitioner herein had initially filed a suit for enforcement of this award. However, realizing that no such suit is required to be filed inasmuch as such an award, even when it is a foreign award, is enforceable and executable under the Arbitration and Conciliation Act, 1996 (hereinafter referred to as the '1996 Act'), the petitioner filed the present execution petition and withdrew the suit, being Suit No. 740A/1999. The petitioner stated that the award in question is passed by the Arbitral Tribunal in England, which is a country notified under the New York Convention. The enforcement of the award is, accordingly, sought under Sections 5, 6 and 8 of the Foreign Awards (Recognition and Enforcement) Act, 1961. However, this Act stood repealed by the 1996 Act inasmuch as Part II, Chapter I of the same (Section 44 to 52) lays down the provisions for enforcement of foreign arbitral award given in the country which is signatory to the 1958 Convention on the Recognition and Enforcement of Foreign Arbitral Awards (hereinafter referred to as the 'New York Convention').

3.  According to the petitioners, when the disputes arose and were referred to the arbitration in London, both the parties sought substantive relief and were represented by counsel before the Arbitral Tribunal. The Tribunal, after an oral hearing in London from

Ex.P. No. 74/2000 & OMP No. 173/1998   nsk                    Page 2 of 32

21.9.1998 to 25.9.1998, passed the reasoned award in favour of the petitioner ordering and directing the respondent to pay to the petitioner a sum of US$ 819,983.16 together with interest @ 7% p.a. from 1.10.1995 till the date of filing of the award. Costs have also been awarded in favour of the petitioner amounting to Sterling £ 26,762.17 being the cost of the award and Sterling Pounds £ 129,929.79 being the petitioner's cost. No appeal was filed by the respondent against this award and, therefore, the award has become final and binding.

4.     In addition to impleading respondent No.1, namely, M/s. Tinna Oils & Chemicals Ltd., the petitioner has also arraigned M/s. Tinna Finex Ltd. as the respondent No.2. Though the vessel was chartered by the petitioner for the respondent No.1, namely, M/s. Tinna Oils & Chemicals Ltd., in a Scheme of Arrangement sanctioned by this Court, the said company was taken over by M/s. Tinna Finex Ltd. Because of this reason, the respondent No.2 was also impleaded before the Arbitral Tribunal and is arraigned in the execution petition as well.

5.     In this execution petition, notice was issued on 19.7.2000, which was accepted by counsel for both the respondents, who were appearing at that time in Suit No. 740-A/1998.

6.     The petitioner has also filed OMP No. 173/1998, which is an application under Section 9 of the 1996 Act, with the prayer that the respondents be directed to furnish security to the tune of US$

1,308,340.54 besides costs and they be also directed to disclose, on oath, the details of movable and immovable assets of the respondent No.1, which have been transferred to the respondent No.2. It is also prayed that they be restrained from alienating and/or encumbering their movable and/or immovable assets. In this OMP, vide order dated 13.8.1998, a Local Commissioner was appointed to visit the factory premises of the respondents and prepare an inventory of all the movable assets and try to ascertain other immovable assets which are in the names of the respondents. Interim injunction in terms of prayer (c) of the petition was also granted which *inter alia* reads as under:

> "Respondents, its directors, agents, representatives be restrained by ad interim injunction restraining them from alienating, transferring parting with possession, encumbering and/or dealing with any movables and/or immovable assets of the company any manner anywise and operating from the Bank Account with Syndicate Bank, mayapuri, New Delhi."

7. The respondents have filed their objections to this execution petition. In the objections filed on behalf of the respondent No.1, it is stated that the vessel in question was chartered for carrying a cargo of potatoes. However, on account of improper storage by the petitioner, the said goods got spoiled and ultimately had to be dumped in the sea. On account of the loss suffered by the respondent No.1, the financial worth of the said respondent suffered heavily and it became a sick company. The situation was such that its net worth was in the negative and the funds available with it were not even sufficient for payment of the dues of the banks and financial institutions. It could not even pay the costs for the counter claim for

*Ex.P. No. 74/2000 & OMP No. 173/1998*

which reason it was not proceeded with by the arbitrators. It is stated that the respondent No.1 had to undertake the Scheme to accommodate a foreign investor, otherwise the company was financially unviable and would have gone bankrupt. It is also stated that various options were considered for revival of the respondent No.1. The detailed restructuring report was prepared. It dealt with the need for restructuring, the strategy for revival and various alternatives. It recommended the acceptance of an offer from M/s.Archer Daniels Midland Singapore Pte. Ltd., which is a Fortune 500 company and a world leader in oilseeds processing. The entire exercise has taken place during the years 1995-96, much prior to the commencement of the arbitration proceedings. The Scheme of Arrangement, as formulated, required that only the manufacturing assets will remain in the respondent No.1 so that the new company could start with a clean state. M/s. Archer Daniels Midland Singapore Pte. Ltd. will bring in funds and all other assets and financial liabilities will be transferred to another company M/s. Tinna Finex. This was the only way for revival of the respondent No.1.

8.   It is further stated that prior to the Scheme of Arrangement, the respondent No.1 had three divisions, Head Office/Merchant Export Division, Oil Processing Division at Latur and Cargo Handling Division at Vizag. Export sales are a part of merchant export division as proved from the balance sheet. All legal and other proceedings of the 'Spin Off Division' or any matter arising before the date of

arrangement and relating to any property, right, power, liability, obligation or duty of the respondent No.1 were to be continued and enforced by or against the respondent No.2 only. A petition under Section 391 of the Companies Act was also filed in the Delhi High Court being C.P. No. 303/1997 for seeking the mandatory approval of this Court to the Scheme of Arrangement. With effect from the date of arrangement, i.e. 1.4.1997, all assets and liabilities of *'Spin Off Division'* were to vest in the respondent No.2, without any further act, deed or thing, by operation of law. The Scheme was approved by this Court on 7.11.1997. Before approving the Scheme, the Court had ordered for convening the meeting of the creditors, which meeting was held on 2.8.1997 and the Scheme of Arrangement was approved by the creditors. The petitioner never participated in the meeting and never objected to the Scheme of Arrangement. This Scheme was also duly registered with the Registrar of Companies on 15.1.1998. The arbitration took place only thereafter, i.e., in September 1998.

9.    It is, thus, the case of the respondent No.1 that the liability of the petitioner was taken over by the respondent No.2 and, therefore, it is only the respondent No.2 which is liable to make payments, if any. This stand is also sought to be buttressed by pleading that after the sanction of the Scheme by this Court, the claim of the petitioner regarding present arbitration were reflected in the accounts of the respondent No.2 from the financial year 1997-98 onwards. The

ATTESTED
Examiner Judicial Dept
High Court of Delhi

respondent No.2 even paid off other secured creditors, bankers and financial institutions and the payments made in this regard was more than Rs. 20 crores, which proves the genuineness of the Scheme. M/s.Archer Daniels Midland Singapore Pte. Ltd. acquired 60% shareholding of the respondent No.1 (now increased to 75%) by infusion of funds, and used to pay off debts. Not only this, the respondent No.2 even took over the litigation and contested the matter before the Arbitral Tribunal. It is stated that when the hearing took place before the Arbitral Tribunal from 21st to 25th September 1998, it was agreed to pass the award in the name of the respondent No.2. However, no formal order was passed. The cost of arbitration was also to be borne by the respondent No.2. This plea is sought to be supported from the fact that a letter was issued from the solicitors on 30.9.1998 for recording the agreement that award was passed in the name of the respondent No.2. The petitioner's solicitors, by their letter dated 2.10.1998, accepted the above. Their only plea was that the order of Scheme of Arrangement was not registered and, therefore, proof of registration be given. But they never denied that the respondent No.2 only was liable. Since they demanded the proof of registration, it was also furnished to them vide letter dated 12.10.1998. It is also pointed out that in the final award, which was passed on 19.11.1998, the name of the respondent appears as *'Tinnal Oils & Chemicals Ltd. in a Scheme of Arrangement by order of the High Court of Delhi with Tinna Finex Ltd'*, which would show that even the Arbitral Tribunal had accepted the position regarding the

Ex.P. No. 74/2000 & OMP No. 173/1998    nsk

ATTESTED

Examiner (Judl. Sd.) Dept
High Court of Delhi

Page 7 of 32

Scheme of Arrangement as per which only the respondent No.2 is liable for all consequences arising out of the litigation. Not only this, even the proceedings for taxation for costs commenced by the petitioner thereafter were only against the respondent No.2. It is further stated that filing of the execution petition against the respondent No.2 would also indicate that the petitioner admits the legal consequences arising out of the Scheme of Arrangement, which is a statutory transfer of assets and liabilities and is binding on all concerned. The petitioner has not challenged the Scheme of Arrangement even after coming to know of the same and, therefore, in these proceedings it is estopped from challenging the Scheme or denying the legal consequences.

10.  The maintainability of the execution petition is also challenged on the ground that Ms. Priya D. Nair, who has filed this petition on behalf of the petitioner as its constituted attorney, is not authorised to file such a petition inasmuch there is no resolution of the petitioner giving her such authorisation.

     The maintainability is also questioned on the ground that it is contrary to public policy and as it will have the effect of nullifying the Scheme of Arrangement sanctioned by this Court.

11.  The respondent No.2 has also challenged the maintainability of the execution petition. In addition to questioning the competence of Ms. Priya D. Nair to file the petition, the respondent No.2 has submitted that it has been impleaded only because of the Scheme of

Arrangement approved by this Court vide order dated 7.11.1997 under which the *Spin Off Division* of the respondents No.1 stands transferred to the respondent No.2. Therefore, liability of the respondent No. 2 is limited to what is provided in the Scheme of Arrangement. The respondent No.2 has already acted upon the Scheme of Arrangement and discharged its obligations. It has paid off the secured creditors, bankers and financial institutions an amount of over Rs. 20 crores from the funds given to it under the Scheme of Arrangement. It is additionally contended that the award dated 19.11.1998 is not a *'Foreign Award'*. The petitioner company is registered in Panama and is carrying on its business from there. Panama is not a reciprocating territory either under the New York Convention or under the Geneva Convention. Panama has also not been recognized as a reciprocating territory by the Government of India, therefore, provisions of Part II, Chapter I of the 1996 Act are not applicable. The validity of the award is also challenged on the ground that the very constitution of the Arbitral Tribunal was contrary to the Charter Party Agreement between the petitioner and the respondent No.1 as per which the Arbitral Tribunal was to consist of two arbitrators, one each to be nominated by each party. The said arbitrators were to appoint an Umpire. No power is vested on the two arbitrators to appoint a third arbitrator.

12.    On merits, the validity of the award is challenged on the ground that the counter claims preferred by the respondent No.1, in whose shoes



the respondent No.2 has stepped in, have not even been considered by the Arbitral Tribunal, whereas the entire claim filed by the petitioner has been considered in detail. It is also submitted that the respondent No.2 has been denied the opportunity to prosecute its claim, only because it could not give security as demanded. It is submitted that a party cannot be deprived of its legal rights due to financial inability of the party to give security and, therefore, the same amounts to violation of principles of natural justice thereby rendering the award unenforceable. It is also stated that the award has been based on certain documents in respect of which no sufficient notice was given to the respondents and no opportunity was provided to them to lead evidence to disprove the said documents. In this respect it is submitted that on 22.7.1998, the Arbitral Tribunal passed the order stipulating the schedule which was to be followed by the parties, as under :-

> "(i) Tinna Oils and Chemicals Limited to instruct new solicitors and appoint replacement for Mr. Ferryman by no later than close of business in London on Friday, 24th July 1998.
>
> (ii) Witness statements to be exchanged by close of business in London on Friday 14th August, 1998.
>
> (iii) Experts reports to be exchanged by no later than close of business in London on Friday, 28th August, 1998, together with the service of any civil evidence act notices.
>
> (iv) Bundles for the hearing to be agreed by 11th September 1998.
>
> (v) Actual dates of hearing were fixed from 21st September to 25th September 1998."

It is further submitted that the hearing of the matter by the Arbitral Tribunal commenced on 21.9.1998. The petitioner on

22.9.1998, at the close of the hearing for the day, produced a report by the Cambridge Research Technology Institute, which had not been filed by the petitioner at the time of the filing of the documents and submissions of the report of the experts, and sought to rely on the same. The respondent No.2 was directed to cross-examine a person on the said report even though he was not the author of the same. The request of the respondent No.2 to produce the author of the report for cross-examination on the basis of the same was also not accepted by the Arbitral Tribunal. The said report was a highly technical report and the same required a detailed study before any effective cross-examination could be conducted on the same and before evidence and arguments could be led to disprove the said report. Further, the aforesaid report could be proved by its author alone. However, the author of the said report was not produced in evidence by the petitioner. Thus, the said report was not proved in accordance with law. Despite that, the Arbitral Tribunal has relied upon the said report and it is only on the basis of the same that the finding against the respondent No.2 has been returned by the Arbitral Tribunal. It is submitted that the petitioner had produced evidence by way of affidavits of the Master and Chief Officer of the ship. Their testimony has been heavily relied upon by the Arbitral Tribunal. However, the said persons were not produced for cross-examination by the petitioner. It is a settled principle of law and public policy in India that any testimony which has not been tested



on the touchstone of a cross-examination cannot be relied upon under any circumstances.

13. In addition, it is also submitted that it was the petitioner's negligence in not storing the cargo properly, as the petitioner was unable to maintain the stipulated temperature of 5-7°C in the holds during the currency of the voyage, which resulted in sprouting in the potatoes and the entire cargo had to be discarded due to the negligence of the petitioner because of which the respondent No.2 suffered heavy losses. The Arbitral Tribunal has not even considered these contentions raised by the respondents before it. It is also submitted that even if the evidence were to be considered entirely in favour of the petitioner, at best a finding to the effect that the potatoes of poor quality can be returned against the respondent No.2, though the same is denied. There is no evidence whatsoever to prove that the goods, as loaded in the ship, were of a quality which was unacceptable to the importer.

14. The award is also challenged on the ground that though proof of the actual damage suffered by the petitioner is given, still the entire claim of the petitioner has been accepted, which is against the law of India as well as England inasmuch as the parties can be compensated for the actual damage and no notional damages can be granted. Even otherwise, nothing was suggested before the Arbitral Tribunal by the



petitioner to mitigate the alleged loss and, therefore, the quantum of damages, as granted, is clearly unreasonable.

15.    The petitioner has filed response to the aforesaid objections of the respondent No.1 & 2, note whereof shall be taken while considering these objections.

16.    Before coming to other objections, the three fundamental issues raised by the respondents, which go to the root of the matter and challenge the maintainability of the petition itself, need to be addressed. These are :-

    (i)    Authority of Ms. Priya D. Nair to file the present petition?
    (ii)   Whether the award in question is a *'Foreign Award'*?
    (iii)  What is the effect of the Scheme of Arrangement between the respondent No.1 and the respondent No.2, as sanctioned by this Court vide order dated 7.11.1997?

    The answer to these questions would determine as to which respondent is liable, if at all, and to what extent.

17.    <u>RE. – Regarding competency of Ms. Priya D. Nair to file the petition</u>

    This issue proceeds on the premise that there is no resolution of the petitioner company authorizing Ms. Priya D. Nair to file the petition on its behalf, which has been produced and submitted to the

<u>Ex.P. No. 74/2000 & OMP No. 173/1998</u>    nsk



Court and further that Ms. Juliet Sarah Blanch has no authority to swear the affidavit.

I may note that Ms. Blanch, who had filed the affidavit, is a Solicitor and Partner of Norton Rose, a firm from which solicitor was engaged by the petitioner. I may also note that affidavit dated 27.4.2006 of Mr. Christopher Hobbs is also filed. He is a solicitor of Supreme Court of England and Wales. In the affidavit he has stated that he has been a partner of Norton Rose within the Dispute Resolution Department for a period of 11 years and was swearing the said affidavit in connection with a claim by the petitioner herein. In that affidavit, it is *inter alia* stated that after the award was published and in the absence of payment of the award by the respondents, the petitioner instructed his firm Norton Rose to enforce the award against the respondents. He further stated that as per well recognized and established practice in England, the solicitors who are instructed by clients to enforce an arbitration award to take all such procedural steps as are necessary in order to implement such instructions. It is further mentioned in para 5 of the said affidavit as under :-

"5. As part of the procedure for enforcement of an arbitration award under the New York Convention for reciprocal recognition and enforcement of arbitral awards, it is necessary to file an affidavit confirming that the award is one to which the New York Convention applies and that it remains binding on the parties. This is simply a procedural requirement, and following the instructions given to Ms. Juliet Sarah Blanch, Solicitor & Partner with Norton Rose, by National Ability SA to enforce the Award, I affirm that Ms. Juliet Sarah Blanch had the necessary authority from, and was thus fully authorized by, National Ability S.A. to swear the Affidavit dated 2 February 1999 in respect of enforcement of the Award."

From the aforesaid, it can be stated that Ms. Blanch has the necessary instructions and also requisite knowledge of the facts of the case on the basis of which she could swear the affidavit.

18.   Insofar as power in favour of Ms. Priya D. Nair is concerned, the petitioner has also placed on record original power of attorney dated 5.4.2006 in her favour, duly certified by the officials in the Ministry of Affairs in the Republic of Panama.  By this power of attorney, act of filing the present petition is duly ratified and confirmed.  This act indicates the objection of the respondents.  At this stage, I may quote from the judgment of this Court in *Delhi Lotteries v. Rajesh Aggarwal & Ors.,* 69 (1997) DLT 543, wherein such a contention was brushed aside by observing as under :-

> "11.   Learned Counsel for the respondent in support of his contention has led me through quite a good number of authorities which lay down in unequivocal terms that if the suit is filed by a Manager of a proprietorship concern who is authorized to do so and the intention to do so can be gathered from the averments in the plaint, in that eventuality the frame of the suit cannot be said to be defective.   The power of attorney can be placed on record, if has already not been done, even at a subsequent stage to ratify the acts of the Manager, including the institution of the suit.  It was so held by a Division Bench of the Madras High Court as reported in AIR 1976 Madras 151, *M.C.S. Rajan & Co. v. National Nail Industries, Tiruchirapalli and Others.*   The facts of the said authority are in *pari material* with the facts of the present case.  Hence observations in the said case *pari passu* can be made applicable to the facts of the present case without any difficulty.  I am tempted here to cite a few lines from para 4 of the said judgment "...But in a case where a Manager of a proprietorship concern signs the pleadings and verifies them as a person who has been duly authorized to sign the same and as one who has been acquainted with the facts of the case, then it is reasonable to say that, if at any material point of time and particularly when the defendants raise a specific plea that the pleading has not been properly signed or verified, he produces


ATTESTED
Examiner Judicial Dept.
High Court of Delhi

the requisite authority from the sole proprietor or satisfies the Court that he is fully acquainted with the facts of the case, the principle and substance of Rules 14 and 15 are satisfied. The case has to be decided on the elementary principle of ratification of an act by a principal. That the person who signed the pleadings and verified it is the Manager of the concern is not in dispute.... Ex.A-20 is the power of attorney produced during the trial of the case which establishes that Padmanabhan has appointed and constituted Mr. Narayana to file a suit against the defendants and take all such steps necessary in the said matter."

12.    To the same effects are the observations of a Division Bench of the Rajasthan High Court as reported in AIR 1955 Rajasthan 57, *Machosingh v. Union of India*, and (1948) 2 All.E.R. 482, *Alexander Mountain & Co. v. Rumere Ltd.*

13.    It is now well settled principle of law that a suit is not to be dismissed for technical reasons such as the plaint was not signed and verified by a competent person because such type of objections do not go to the root of the matter if a party has otherwise substantiated his claim. It was opined by their Lordships of the Supreme Court in AIR 1997 Supreme Court 3, *United Bank of India v. Naresh Kumar and Others.* "Where the Courts came to a conclusion that money had been taken by certain parties from Bank and certain persons had stood as guarantors and that the claim of the Bank was justified, it will be a travesty of justice if the Bank is to be non suited for a technical reason which does not go to the root of the matter and the only defect which was alleged on behalf of the parties was on which was curable."

19.    RE. – Foreign Award

The contention of the respondent No.2 that the award dated 19.11.1998 is not a *foreign award* predicates on the plea that the petitioner company is registered in Panama and is carrying on its business from there and Panama is not a reciprocating territory either under the New York Convention or under the Geneva Convention. It is also submitted that Panama has not been recognized as a reciprocating territory by the Government of India and, therefore, provisions of Part II, Chapter I of the 1996 Act are not applicable.

This submission of the objector is factually incorrect inasmuch as requisite documents were produced by the petitioner, which show that Panama is recognized as a reciprocating territory. That apart, Section 44(b) of the 1996 Act states that the country where the award has been issued must be a country notified by the Indian Government to be a country to which the New York Convention applies. Thus, it is to be borne in mind that award in question is rendered by the Arbitral Tribunal in England, which is admittedly a country notified under the New York Convention.

20. Section 44 of the Arbitration and Conciliation Act, 1996 defines *'Foreign Award'* as under :-

> "44. Definition. - In this Chapter, unless the context otherwise requires, "foreign award" means an arbitral award on differences between persons arising out of legal relationships, whether contractual or not, considered as commercial under the law in force in India, made on or after the 11th day of October, 1960 –
>
> (a) in pursuance of an agreement for arbitration to which the Convention set forth in the First Schedule applies, and
>
> (b) in one of such territories as the Central Government, being satisfied that reciprocal provisions have been made may, by notification in the Official Gazette, declare to be territories to which the said Convention applies."

21. The ingredients which are to be satisfied, as per the said section, to term an award as a *'foreign award'* are the following :-

1. It must have been made on or after the 11th day of October, 1960.

2. It must be on differences between persons arising out of legal relationships, whether contractual or not, considered as commercial under the law in force in India

3.  It must have been made pursuant to an agreement for arbitration to which the Convention set forth in the First Schedule applies.

4.  It must have been made in one of the territories of the reciprocating contracting States for which the Union Government may issue notification declaring the territories to which the New York Convention would apply.

The aforesaid ingredients stand satisfied in this case and, therefore, the award in question is to be treated as *'foreign award'*. This issue, therefore, stands answered in favour of the petitioner.

22.  <u>RE. – Scheme of Arrangement</u>

The factual position, on this issue, which is not in dispute is that there is a Scheme of Arrangement arrived at between the respondent No.1 and respondent No.2 under the Companies Act, 1956, which has been approved by the court as well in a petition filed under Section 391 of the Companies Act. Date of arrangement fixed as per the said Scheme is 1.4.1997. From this date, all assets and liabilities of 'Spin Off Division' vested in the respondent No.2 without any further act, deed or thing or by operation of law.

23.  Before I come to the legal effect of the Scheme, I may deal with the objection of learned counsel for the petitioner to the Scheme. It was argued that notice of the Scheme was never given to the petitioner though the petitioner was a creditor and, therefore, the petitioner could not participate in the meeting and object to the Scheme of Arrangement. The plea, thus, was that such a Scheme was not binding upon the petitioner. I am not inclined to accept this plea. It

is not in dispute that the court had ordered convening of the meeting of creditors before approving the Scheme. Meeting was held on 2.8.1997 and the Scheme of Arrangement was approved by the creditors. Thereafter, the court put its seal of approval to the said Scheme on 7.11.1997. If the petitioner did not receive any notice of the said Scheme, it was for the petitioner to move appropriate application before the said Company Judge, which it could do so even after the approval of the Scheme. No such step was taken even when the petitioner came to know about the said Scheme during the pendency of the arbitration proceedings. Having failed to take any such step, it does not now lie in the mouth of the petitioner to contend that the Scheme is not binding upon it for want of notice. I may record that whether the petitioner received notice of the meeting or not is a disputed question of fact which the petitioner was to establish and it could be done by moving appropriate application before the Company Judge. On this basis, even the plea of learned counsel for the petitioner that fraud was played upon the petitioner by not serving notice would not be available to it.

24.   Insofar as effect of the Scheme is concerned, the law on the point is abundantly clear when such a scheme is approved by the court under Section 391 of the Companies Act binding on all the parties, including all the creditors. Therefore, the petitioner shall also be bound by the same. The alleged liability *qua* the petitioner, as per the award, relates to 'Spin Off Division'. All the assets and liabilities of this

Division have been taken over by the respondent No.2 by operation of law and no further act, deed or things were required to be done for this purpose. Thus, from the appointed date, i.e. 1.4.1997, it is the respondent No.2 which assumed all the liabilities, including the liability of the petitioner, if any. Therefore, the Scheme of Arrangement would be binding on the petitioner as well as the respondent No.2.

25.    The effect of decision on this issue would be to hold that the respondent No.1 was no more liable towards the petitioner after 1.4.1997. This fact was disclosed by the respondent No.1 before the Arbitral Tribunal and taken note of by the Arbitral Tribunal as well, which is reflected from the Cause Title of the Award itself. As a consequence, objections of the respondent No.1 succeed and it is held that the respondent No.1 is not liable for any payment under the said award.

26.    In view of the aforesaid decision on the three fundamental issues, the objections of the respondent No.2 to the said award remain to be discussed.

27.    RE. – Objections of the Respondent No.2

The objections of the respondent No.2, which remain to be dealt with, can be paraphrased as under :-

(a)    The Arbitral Tribunal was not constituted properly as it was contrary to the Charter Party Agreement between the

petitioner and the respondent No.1 as per which the Arbitral Tribunal was to consist of two arbitrators, one each to be nominated by each party. The said arbitrators were to appoint an Umpire. No power is vested on the two arbitrators to appoint a third arbitrator.

This objection hardly has any merit. The two arbitrators had to appoint a third person. Whether he is treated as an Umpire or a third arbitrator would not be of much consequence. The petitioner also explained that it was agreed by a letter dated 12.12.1995 from the attorneys of the respondent No.1 that both parties, namely, the petitioner and the first respondent would appoint their own arbitrator, with the arbitrators so appointed being at liberty to choose an umpire. It was in view of this letter of the respondent No.1 itself that each party nominated its arbitrator and the two arbitrators chose Mr. Michael Baskerville to act as umpire. This course was, thus, adopted by the parties willingly. Moreover, no objection was taken by the respondent before the Arbitral Tribunal questioning its constitution. Therefore, it is too late in the day to take such an objection.

(b)  Other objection is that the award is contrary to public policy of India. It is premised on the ground that the counter claim filed by the respondent No.2 had not been considered by the arbitrators and he was denied an opportunity to prosecute its

claims. The basis of this plea is that the respondent No.2 was asked to give security, which it could not furnish due to financial inability, and that was the reason that it was deprived of its legal right, which amounts to violation of principles of natural justice.

The question would be as to whether demand by the Arbitral Tribunal to furnish such a security is illegal? It cannot be disputed by the respondents that they agreed for settlement of disputes by a specific forum which was to adjudicate the disputes as per its rules. When the rules provide for furnishing of security, the respondents knew the rigors of such a mechanism. Therefore, they cannot now turn around and say that they could disobey such directions to furnish security as ordered by the Arbitral Tribunal and complain that even if there was default on their part in refusing to furnish the security, their claims/counter claims should have been considered. That apart, in the present case, it does not even lie in the mouth of the respondents to take such an objection inasmuch as the direction to furnish security was at their instance. In this behalf, I may note that on 26.4.1996 the respondent No.1, through its counsel, addressed a fax dated 26.4.1996 to the Arbitral Tribunal seeking directions from the tribunal to direct the petitioner to furnish security for cause in the sum of US$150,000 for prosecuting its claim in the arbitration. On this the Arbitral Tribunal passed orders dated

ATTESTED
Examiner Judicial Dept.
High Court of Delhi

1.5.1996 whereby the petitioner as well as the first respondent were directed to furnish security in the sum of US$ 150,000 to secure the cost of the claims and counter claims brought by the petitioner and the respondent No.1, respectively. Thus, it is on the insistence and at the instance of the respondents that such an order was passed. Thereafter, if the respondents failed and/or neglected to comply with the said order dated 1.5.1996 and refuse to furnish the security, the Arbitral Tribunal was justified in staying the counter claims of the respondents. Learned counsel for the petitioner explained that directions to give such security and disregard the claim for failure to furnish the security is in consonance with the English law.

I, therefore, do not find any merit in this objection either.

(c)   The next objection is that the award is based on certain documents in respect of which sufficient notice was not given to the respondents and no opportunity was given to them to lead evidence to disprove the said documents. The precise grievance in this behalf was that as per the schedule fixed by the Arbitral Tribunal vide its orders dated 22.7.1998, the actual dates of hearing were fixed from 21.9.1998 to 25.9.1998. Before the hearings on the aforesaid dates, as per the schedule, the statement of witnesses were to be exchanged by 14.8.1998 and expert reports were also to be exchanged by 24.8.1998. However, the petitioner did not adhere to this schedule and

gave any documents in advance, but produced the same only at the time of hearing. It is further stated that on 22.9.1998, report by Cambridge Research Technology Institute (CRTI) was produced which was not filed earlier. The respondent had objected to production of this report at a belated stage, but this objection was ignored by the Arbitral Tribunal and the report was taken on record. In these circumstances, the respondent made request for postponing of the hearing to enable it to study the said report, which request was also rejected. So much so, the respondent was directed to cross-examine a person on the said report even though he was not the author of the same. Not only this, request of the respondent to produce the author of the report for cross-examination was also rejected. It is argued that the said report was highly technical in nature and required detailed study, but no time was given to the respondents to study the same for effective cross-examination of the witness. It was also argued that in any case the report was not proved in accordance with the law as author of the report was not produced. Despite this, the Arbitral Tribunal relied upon this report, which is the sole basis of its findings against the respondents.

It is further contended that the petitioner had produced the evidence by way of affidavits of the Master and Chief Officer of the ship and though their testimony has been heavily relied upon by the Arbitral Tribunal, the said persons were not



produced for cross-examination by the petitioner. According to the objector, this is against the public policy of India that any testimony which has not been tested on the touchstone of the cross-examination is relied upon.

I may note that in reply to these objections the petitioner has denied that it failed to adhere to the schedule fixed by the Arbitral Tribunal vide its order dated 22.7.1998. The allegation that CRTI report was filed only on 22.9.1998 is also denied. Other allegations made by the respondent No.2 regarding refusal of request to adjourn the proceedings or giving it chance to produce evidence in rebuttal to the CRTI report were rejected by the Tribunal. In view of this denial, onus was upon the respondent No.2 to show that the report was filed on 22.9.1998. I also find that even the respondent No.2 had filed report of the technical expert. Therefore, it is not a case where the respondent No.2 was not given a chance.

The proceedings recorded by the Arbitral Tribunal are not produced before me. In these circumstances, the respondent No.2 has failed to show that any request was made for adjournment of the proceedings on the purported ground that the report was filed only on 22.9.1998 and the request was rejected. Even if it is presumed that nothing in this behalf was recorded by the Arbitral Tribunal in the day-to-day proceedings, minimum which was expected from the respondent No.2 was to put it on record that such a request

was made and the Tribunal did not accede to that request. One cannot be oblivious of the nature of such international arbitration proceedings. The schedule fixed by the arbitral tribunals is strictly adhered to and only in exceptional circumstances adjournments are given. There is a rational and justification for the same. In respect of disputes relating to international commercial dealings, such arbitral tribunals ensure that they are decided with utmost alacrity and promptness. Such proceedings are not allowed to be dragged on unnecessarily causing delays. In fact, this is the culture which needs to be set-in in all kinds of arbitration proceedings, whether international or domestic.

It is stated by the petitioner that proceedings were conducted in accordance with the established practice in England and procedure followed there. This is an important fact which cannot be lost sight off. If such procedure is followed as prevalent in the country where the arbitration took place, it cannot be said that the same would be in violation of principles of natural justice when considered on the touchstone of law prevailing in India. Way back in the year 1963, the Supreme Court in the case of *R. Vishwanathan & Ors. v. R. Gajambal Ammal & Ors.,* AIR 1963 SC 1, made following pertinent observations relating to enforcement of foreign judgments in India :-

"40.   Before we deal with the contentions it may be necessary to dispose of the contention advanced by the executors that it is not open in this suit to the plaintiffs to raise a contention

about bias, prejudice, vindictiveness or interest of the Judges constituting the Bench. They submitted that according to recent trends in the development of Private International law a plea that a foreign judgment is contrary to natural justice is admissible only if the party setting up the plea is not duly served, or has not been given an opportunity of being heard. In support of that contention counsel for the executors relied upon the statement made by the Editors of Dicey's "Conflict of Laws", 7th Edition Rule 186 at pp. 1010-1011 and submitted that a foreign judgment is open to challenge only on the ground of want of competence and not on the ground that it is vitiated because the proceeding culminating in the judgment was conducted in a manner opposed to natural justice. The following statement made in "Private International Law" by Cheshire, 6th Edition pp. 675 to 677 was relied upon:

"The expression 'contrary to natural justice' has, however, figured so prominently in judicial statements that it is essential to fix, if possible, its exact scope. The only statement that can be made with any approach to accuracy is that in the present context the expression is confined to something glaringly defective in the procedural rules of the foreign law. As Denman, C.J. said in an early case :

"That injustice has been done is never presumed, unless we see in the clearest light that the foreign law, or at least some part of the proceedings of the foreign court, are repugnant to natural justice : and this has often been made the subject of inquiry in our Courts"

In other words, what the Courts are vigilant to watch is that the defendant has not been deprived of an opportunity to present his side of the case. The wholesome maxim audi alteram partem is deemed to be of universal, not merely of domestic application. The problem, in fact, has been narrowed down to two cases.

The first is that of assumed jurisdiction over absent defendants.... Secondly, it is a violation of natural justice if a litigant, though present at the proceedings, was unfairly prejudiced in the presentation of his case to the Court."

It is unnecessary to consider whether the passages relied upon are susceptible of the interpretation suggested, for private international law is but a branch of the Municipal law of the State in which the Court which is called upon to give effect to a foreign judgment functions and by S. 13 of the Civil Procedure Code (Act V of 1908) a foreign judgment is not regarded as conclusive if the proceeding in which the judgment was obtained is opposed to natural justice. Whatever may be the content of the rule of private international law relating to "natural justice" in England or elsewhere (and we will for the purpose of this argument assume that the plea that a foreign judgment is opposed to natural justice is now restricted to other jurisdictions only to two grounds – want of due notice and denial of opportunity to a party to present case) the plea has to be considered in the light of the Statute law of India,

and there is nothing in S.13 of the Code of Civil Procedure, 1908 which warrants the restriction of the nature suggested.

41.    By S.13 of the Civil Procedure Code a foreign judgment is made conclusive as to any matter thereby directly adjudicated upon between the same parties. But it is the essence of a judgment of a Court that it must be obtained after due observance of the judicial process, i.e. the Court rendering the judgment must observe the minimum requirements of natural justice – it must be composed of impartial persons, acting fairly, without bias, and in good faith, it must give reasonable notice to the parties to the dispute and afford each party adequate opportunity of presenting his case. A foreign judgment of a competent Court is conclusive even if it proceeds on an erroneous view of the evidence or the law, if the minimum requirements of the judicial process are assured: correctness of the judgment in law or on evidence is not predicated as a condition for recognition of its conclusiveness by the Municipal Court. Neither the foreign substantive law, nor even the procedural law of the trial be the same or similar as in the Municipal Court. As observed by Charwell, J., in Robinson v. Fenner, (1913) 3 K B 835 at p. 842, "In any view of it, the judgment appears, according to our law, to be clearly wrong, but that of course is not enough: Godard v. Gray, (1870) 6 QB 139 and whatever the expression "contrary to natural justice", which is used in so many cases, means (and there really is very little authority indeed as to what it does mean), I think that it is not enough to say that a decision is very wrong, any more than it is merely to say that it is wrong. It is not enough, therefore, to say that the result works injustice in the particular case, because a wrong decision always does." A judgment will not be conclusive, however, if the proceeding in which it was obtained is opposed to natural justice. The words of the statute make it clear that to exclude a judgment under cl. (d) from the rule of conclusiveness the procedure must be opposed to natural justice. A judgment which is the result of bias or want of impartiality on the part of a Judge will be regarded as a nullity and the "trial coram non judice" (Vassiliades v. Vassiliades, AIR 1945 PC 38 and Manak Lal v. Dr. Prem Chand, 1957 SCR 575 : (S) AIR 1957 SC 425."

I do not find the objection of the respondent No.2 getting covered by any of the principles on which such an award could be challenged, namely, the respondent No.2 could not establish that the Tribunal did not consist of impartial persons or it did not act fairly, without bias, or in good faith. Reasonable notice was given to the parties to the dispute by



fixing the schedule much in advance and if that schedule was followed rigorously and even if adjournment was refused, that would not amount to denial of principles of natural justice. The Apex Court in *Hariom Maheshwari v. Vinit Kumar Parikh,* JT 2004 (10) SC 360, clearly laid down that where a party is refused an adjournment and where it is not prevented from presenting its case, it cannot, normally, claim violation of natural justice and denial of a fair hearing.

The observations made in *R. Vishwanathan & Ors. v. R. Gajambal Ammal & Ors.* (supra) (para 41), answers the other objection of the respondent No.2 as well, i.e. foreign award (which is not enforceable as decree) is conclusive even if it proceeds on an erroneous view of the evidence or law. Therefore, it is not permissible to go into the other issues raised regarding non-production of the author of the CRTI report and instead the petitioner producing its own experts, etc.

(d)    Some other objections to the award are also taken, as noted in the earlier paragraphs of this judgment, namely, negligence on the part of the petitioner in not storing the cargo properly; not going into the question of mitigation of losses; quantum of damages granted being unreasonable, etc. However, these are the issues on the merits of the award which are not within the permissible scope of objections. Therefore, I do not find merit in any of the other objections.



The aforesaid objections clearly remind us that the same are simply hyper-technical in nature.

28. For international arbitration to have credibility, the arbitral award arising from it must be a meaningful remedy. In other words, success in arbitration is ultimately determined by the successful enforcement of the arbitral award. Once the arbitral tribunal's decision has been made in the form of an award, it is an implied term of every arbitration agreement that the parties will carry it out. Although, one may acknowledge that to be performed the award should be recognized and enforced in a national court otherwise it does not have much practical value [Source: Tibor Várady, et al., *International Commercial Arbitration*, Thompson West (2003), p. 733]. Gunther Horvath in its article 'The Duty of the Tribunal to Render an Enforceable Award' (2001) 18 *Journal of International Arbitration* 135 remarked:

> "Faith in this system of international arbitration largely explains the higher rate of voluntary compliance with arbitral awards and the extremely low rate of vacatur and non-enforcement in situations where awards are not automatically observed. Nonetheless, the risk of non-enforcement remains looming like a 'Sword of Damocles' over the entire system, and the costs of non-enforcement, even when rare, are enormous for the parties, the arbitrators, the institutions, the States and the system as a whole."

29. It is therefore essential that such an award when properly rendered be legally binding and enforceable both at the place where it is rendered and at the place where the judgment debtor has assets. As Alan Redfern & Martin Hunter [*Law & Practice of International*

Ex.P. No. 74/2000 & OMP No. 173/1998    nsk

*Commercial Arbitration,* Sweet & Maxwell Ltd. (3rd Ed. 1999), p. 449] aptly puts it:

> "... the purpose of recognition on its own is generally to act as a shield. Recognition is used to block any attempt to raise in fresh proceedings issues that have already been decided in the arbitration that gave rise to the award whose recognition is sought. By contrast, the purpose of enforcement is to act as a sword. Enforcement is a positive step taken to compel the losing party to carry out an award that he is unable or unwilling to carry out voluntarily. Enforcement of an award means applying legal sanctions to compel the party against whom the award was made to carry it out."

30.  Thus, one should favour a pro-arbitration approach with respect to the enforcement of foreign arbitral award. The said approach is apparent from the observation of the Singapore High Court (*per* Judith Prakash, J.) whereby an argument was rejected on the ground of public policy in the course of resisting the enforcement of a foreign arbitral award *In Re An Arbitration between Hainan Machinery Import and Export Corporation and Donald & McArthy Pte Ltd.,* [1996] 1 SLR 34 which reads as under:

> "... the principle of comity of nations requires that the awards of foreign arbitration tribunals be given due deference and be enforced unless exceptional circumstances exist. As a nation which itself aspires to be an international arbitration centre, Singapore must recognize foreign awards if it expects its own awards to be recognized abroad."

It is not suggested that the courts in India would not refuse to enforce an international award even if a case is made out for interference within the four corners of Section 48 of the 1996 Act read with section 13 of the Code of Civil Procedure. However, once it is found that the award is properly rendered, it is the duty of the courts in India to enforce the same.

ATTESTED
Examiner Judicial Dept
High Court of Delhi

31.    In view of the aforesaid discussion, prayer made in OMP No. 173/1998 is allowed and interim order dated 13.8.1998 is made absolute till the time the decretal amount as per the award is paid by the respondent No.2 and decree satisfied.  OMP is disposed of with these directions.

32.    Insofar as Execution Petition is concerned, the respondent No.2 is directed to make the payment within eight weeks from today.  If no payment is made, the petitioner would be entitled to get the orders of attachment of the properties of the respondent No.2 and take further course of action to realize its amounts under the award from the respondent No.2.  Matter shall be listed before the Regular Bench on 18th August 2008.

Sd/-

(A.K. SIKRI)
JUDGE

June 4, 2008
nsk

Certified to be True Copy

Examiner Judicial Department
High Court of Delhi
Authorised Under Section 70
of The Indian Evidence Act.